**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Efrain VELASQUEZ–MERCADO,
Defendant–Appellant.**

No. 88–2621.

United States Court of Appeals,
Fifth Circuit.

April 28, 1989.

Rehearing Denied June 1, 1989.

---

Marjorie A. Meyers, Roland E. Dahlin, II, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Frances H. Stacy, Jeffery A. Babcock, John G. Crews, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., for plaintiff-appellee.

Before GARWOOD, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Efrain Velasquez–Mercado appeals his sentence of thirty-six months in prison for bringing undocumented aliens into the United States and illegally transporting them. At issue is whether the district court made sufficient findings to depart upward from the Federal Sentencing Guidelines. Concluding that the district court's findings of fact are sufficient and its departure is reasonable, we affirm.

## BACKGROUND

Velasquez is a Salvadoran national. In January, 1988 he and a codefendant led into this country a large group of undocumented aliens. Velasquez assembled one of two groups of aliens that had originally departed from El Salvador. In Mexico, they joined forces and travelled north together. Velasquez was familiar with the desired point of entry into the United States. He collected money from all 32 aliens to secure transportation, arranged for them to be floated across the Rio Grande River, purchased a van, and drove the van with all the aliens toward Houston.

Velasquez was following another van near Hebbronville, Texas, when Boarder Patrol agents stopped the first van and signalled Velasquez to pull over. Instead, he accelerated onto a side street in Hebbronville. The Boarder Patrol agents radioed for assistance while Velasquez continued "at a high rate of speed." Finally, he stopped and tried to exit through the passenger door, and when he discovered that the door was jammed, he jumped in the back of the van and tried to blend in with the other 32 aliens.

When the agents approached the van, the passengers singled out Velasquez as its driver. One woman pointed a finger at him and said that he had taken money from the aliens and that he had raped two of the women. Other aliens later corroborated the stories of sexual abuse. One woman explained that she had to procure a knife to protect herself from Velasquez.

Velasquez was charged in a thirty-nine count indictment with: twenty-three counts of sexual abuse, in violation of 18 U.S.C. §§ 2242, 2244, 2245, and 3238; two counts of bringing undocumented aliens into the United States, in violation of 8 U.S.C. § 1324(a)(1)(A); four counts of transporting undocumented aliens, in violation of 8 U.S.C. § 1324(a)(1)(B); and four additional counts related to the conspiracy to transport or bring in undocumented aliens. Because the district court lacked jurisdiction over alleged sexual abuse that occurred outside the United States, it dismissed those counts. 697 F.Supp. 292 (S.D.Tex. 1988).

Pursuant to a plea agreement in which the remaining counts were dismissed, Velasquez pled guilty to one count of transporting undocumented aliens and the two counts of bringing undocumented aliens into the United States. At his sentencing hearing, the three women who were allegedly abused or threatened by Velasquez were questioned by the judge and examined by counsel. Counsel for Velasquez lodged objections to the offense level recommended in the presentence report. Nevertheless, the district court imposed a sentence of thirty-six months incarceration, which is higher than the guideline-specified sentence.

## I. STANDARD OF REVIEW UNDER THE SENTENCING GUIDELINES

Stripped to essentials, the federal Sentencing Guidelines established an "offense level(s)" for each type or category of federal crime.[1] The Guidelines also specify certain aggravating and mitigating factors that correspondingly increase or decrease the offense level of each crime. See §§ 3A1.1–3D1.2.[2] A sentencing table speci-

---

[1] Some crimes have multiple offense levels. For example, the amount of property stolen or the type and quantity of drugs in the defendant's possession will determine the precise offense level for those crimes. See § 2B1.1(b); § 2D1.1(b).

[2] Unless otherwise identified, section cites are to the Federal Sentencing Guidelines (May 5,

fies the guideline sentence as determined by the intersection of the offense level and the defendant's prior criminal history. Ch. 5, Pt. A. The offense level for Smuggling or Transporting an Unlawful Alien, § 2L1.1, is nine. Velasquez argues that the district court erred in calculating aggravating and mitigating factors and that the district court made insufficient findings to depart from the proper offense level and corresponding sentence.

■ In *United States v. Mejia–Orosco,* 867 F.2d 216, 218 (5th Cir.1989), clarified on rehearing, 868 F.2d 807, 807–08 (5th Cir. 1989), we held that "[f]indings of fact that underlie the district court's sentence are reviewed under a clearly erroneous standard." See 18 U.S.C. § 3742(d). Once the district court has made those findings, the sentence will be affirmed if it results from the proper application of the guidelines to those facts. Id. at 219. A departure from the guidelines will be affirmed if the district court offers "acceptable reasons" for the departure and the departure is "reasonable." Id. See 18 U.S.C. § 3742(e).

## II. AGGRAVATING AND MITIGATING FACTORS

### A. *Aggravating Role § 3B1.1*

■ The Sentencing Guidelines, § 3B1.1(a), provide for a four-level increase to the defendant's basic offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants, or was otherwise extensive." The commentary to this guideline explains: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense [whether knowing or not] are to be considered." This section is designed to reflect the defendant's degree of responsibility for and amount of profit from the commission of the crime.

At Velasquez' sentencing hearing, defense counsel challenged the applicability of § 3B1.1. The district court identified

four participants and then asked the government: "Where did you get the fifth one?" The government responded that the boat man who floated the aliens across the Rio Grande was the fifth participant. In addition, the district court had already enumerated findings relevant to Velasquez' responsibility for, and degree of profit from, the crime. He described Velasquez as a "full blown 'coyote'," the "central figure," who operated in a particularly mercenary fashion, by taking one woman's entire household belongings as a down-payment for his fee. Further, he found that Velasquez handled all the money in the smuggling venture. The court's factual conclusion that Velasquez was an organizer as defined by this guideline is not clearly erroneous.

### B. *Vulnerable Victim § 3A1.1*

■ The government contends that the women on whom Velasquez, at the minimum, forced his attentions were "vulnerable victims," resulting in an offense enhancement of two levels. Section 3A1.1 of the Sentencing Guidelines applies this factor "[i]f the defendant knew or should have known that the victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct...." According to its commentary, this "adjustment applies to any offense where the victim's vulnerability played any part in the defendant's decision to commit the offense."

At the sentencing hearing, the court never ruled directly on whether the women who claimed to have been molested by Velasquez were "vulnerable victims." He did not indicate particular disagreement with the presentence report, which attributed a two-level enhancement to this circumstance of the crime. The judge described Velasquez' sexual conduct as follows:

> [M]y impression, from listening to this testimony, is that while this case is not what it was originally cracked up to be,

1988), which were promulgated by the United States Sentencing Commission pursuant to 18

U.S.C. § 994(a).

and probably not as aggravated as it looked in the original black and white report ... The sense I get from the evidence is that you were sort of—while not actually going out and necessarily forcibly raping people, that you were sort of using your position as "mayordomo" to sort of call in chips whenever you felt like calling the chips; that because you were the leader and in charge, and had the money and were calling the shots and so forth, that you were in a position that you could ask for services and get it if you wanted it.

We are not convinced that the women being transported by Velasquez were "victims" for purposes of § 3A1.1, or that their "vulnerability," if it was such, "played any part in the defendant's decision to commit the offense," because the offense was alien smuggling and the women might be more properly characterized as "customers" than "victims." Nevertheless, whether or not the women who fell prey to Velasquez were vulnerable victims is not critical to the ultimate determination whether the sentence may be approved. The two-level enhancement in this case could add only six months to Velasquez' sentence under the guidelines, and the correlative effect on the district court's departure is not significant.

### C. Willfully Obstructing or Impeding Proceedings, § 3C1.1

■ Guideline § 3C1.1 provides that:

If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level from Chapter Two by 2 levels.

A nonexclusive list of conduct exemplifying the intent of this adjustment includes: "testifying untruthfully or suborning untruthful testimony concerning a material fact ...; threatening, intimidating, or otherwise unlawfully attempting to influence a co-defendant, witness, or juror, directly or indirectly; and furnishing material falsehoods to a probation officer in the course of a presentence or other investigation of the court." Application Notes 1(c), 1(d), 1(e).

The district court found that Velasquez had lied to the probation officer preparing the presentence report and to the court during the sentencing hearing regarding his leadership role in recruiting the aliens. The court disbelieved Velasquez' claim that a woman named Estela had recruited the aliens and had paid him to take them to the United States.

In addition, the government argued at the sentencing hearing that Velasquez had threatened the aliens and their families if they testified against him:

[T]he aliens had indicated that the reason why they weren't going to point this man out [initially] was because they were afraid of what he's going to do when he does get out. He's going to go back, and he knows the family, and he knows the family members, and how to get in touch with them, and so nobody said anything until all of them got together.

The record reflects that these threats were made to the aliens, and the district court granted the two level increase in the offense level for obstructing of justice stating, "I have two for obstruction of Justice ... and that's how he gets to [a guideline-regulated offense level of] 17." The district court's factual conclusion that Velasquez obstructed the administration of justice is not clearly erroneous.[3]

### D. Acceptance of Responsibility § 3E1.1

■ The Sentencing Guidelines, § 3E1.1, provide that:

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal

---

**3.** The government and the district court also sought to base the two-level increase on the fact that Velasquez attempted to flee and then attempted to hide in the van among the passengers. We need not rely on this reasoning to affirm the upward adjustment, as it remains an open question whether fleeing or hiding, in themselves, can constitute obstruction of justice under aggravating level § 3C1.1. *See United States v. Franco–Torres,* 869 F.2d 797, 800 (5th Cir.1989).

conduct, reduce the offense level by 2 levels.

\* \* \* \* \* \*

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

The commentary to this guideline further provides that:

4. An adjustment under this section is not warranted where a defendant perjures himself, suborns perjury, or otherwise obstructs the trial or the administration of justice (see § 3C1.1), regardless of other factors.

5. The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.

Because the district court had already found that Velasquez had testified falsely and had otherwise obstructed the administration of justice, it could hardly have concluded that he accepted responsibility for his crime under § 3E1.1. Indeed, the court declared that Velasquez had not acknowledged his responsibility. This determination was not clearly erroneous.

## III. DEPARTURE FROM THE GUIDELINES

■ The Sentencing Guidelines authorize departures from the guideline-specified sentence when the court finds "an aggravating or mitigating circumstance ... that was not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. § 3553(b). *See also Mejia–Orosco,* 867 F.2d at 219. In *Mejia–Orosco,* we held that a departure from the Sentencing Guidelines will be affirmed if it is based on "acceptable reasons" and it is "reasonable." *Id.*

The district court acknowledged that the presentence report had scored the offense at a level 17, which would authorize a sentence of up to thirty months in prison even though Velasquez had no prior criminal convictions. The court concluded, however, that a departure was warranted. Toward the conclusion of the sentencing hearing, the judge stated, "The guidelines just straight-jacket you into a situation that I just don't think responds to this case." A minute or two later, he explained his reasons further:

Well, look, Mr. Velasquez, I think you're a promoter of alien trafficking ... I simply don't believe this is the first time you've done it. I think you're the main man responsible for bringing these people up here and I think you were charging them money. *I think you used your position to molest the women along the way ... Apparently, in a subtle way, you were using your position as shepherd of the sheep.* I think you were driving that van when you were stopped and I think you tried to run. I think you tried to hide the fact that you were in the van and I just think, trying to put you in all these different covey [sic] holes, that it's not a satisfactory way to approach it, from how I have historically approached *these big alien transporting cases.*

So while I don't have any particular quarrel with how the probation office scored it, I'm going to simply depart from the guidelines in this case and impose a period of confinement of thirty-six months in your case, on all these counts, concurrent.... (emphasis added)

Velasquez' argument that the district court did not state sufficient reasons to support its departure is without merit. The district court explained throughout the sentencing hearing that Velasquez' conduct was more reprehensible than that of other alien traffickers who had been sentenced in that court. Then, in conclusion, the court specifically noted that Velasquez "used [his] position to molest women," and that this was a big alien transporting case. The only remaining issue is whether these two factors were already considered by the Sentencing Commission and whether they warrant an upward departure in Velasquez' sentence.

The commentary to § 2L1.1 provides an unequivocal answer. Application Note 8 provides:

The Commission has not considered offenses involving large numbers of aliens or dangerous or inhuman treatment. An upward departure should be considered in those circumstances.

Thus, a depature is reasonable on the grounds articulated by the trial court. *See United States v. Marco,* 868 F.2d 1121 (9th Cir.1989) (upward departure of 12–18 months was reasonable where transporter of 18 aliens engaged in a high speed chase endangering the lives of the aliens) (relying on § 2L1.1, Application Note 8).[4]

For the foregoing reasons, we AFFIRM the judgment and sentence of the district court.

---

4. We note that Velasquez–Mercado subjected the 32 aliens in his van to such a high speed chase as well.