**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roberto RIVERA, Defendant–Appellant.**

No. 88–2825.

United States Court of Appeals, Fifth Circuit.

July 17, 1989.

Marjorie A. Meyers, Roland H. Dahlin, II, Federal Public Defender, Thomas G.

Lindenmuth, Asst. Federal Public Defender, Thomas S. Berg, Houston, Tex., for defendant-appellant.

Roberto Rivera, El Reno, Okl., (pro-se).

Frances H. Stacy, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Paula Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DAVIS, Circuit Judges.

PER CURIAM:

The defendant-appellant pleaded guilty to transporting an undocumented alien within the United States and was sentenced to five years imprisonment—the maximum sentence under the statute. The defendant-appellant now appeals his sentence, alleging that the district court made an erroneous finding of fact under the Sentencing Guidelines and miscalculated his offense level under the Sentencing Guidelines. The defendant-appellant also urges that the indictment under which he was charged was fatally defective because it did not allege the requisite criminal intent and that he should be allowed to withdraw his guilty plea because the government breached its plea bargain agreement. Finding that the district court did not make an erroneous finding of fact, that the district court's miscalculation of the defendant's-appellant's offense level was harmless error, that the indictment alleged the necessary elements of the crime, and that the government did not breach its plea bargain agreement, we affirm the conviction.

## I.

On February 4, 1988, United States border patrol agents arrested the codefendant of the defendant-appellant, Robert Rivera ("Rivera"), as the codefendant attempted to guide thirteen undocumented aliens around the border patrol checkpoint near Falfurrias, Texas. One of the aliens, Olga Lidia De Paz Mendoza ("De Paz Mendoza"), described and later identified the vehicle in which the aliens had been transported to the border patrol checkpoint. Rivera owned the vehicle, and De Paz Mendoza identified Rivera as the transporter.

Rivera was charged in a six-count indictment—one count of conspiracy to transport undocumented aliens within the United States, see 18 U.S.C. § 371 (1966), and five counts of transporting undocumented aliens within the United States, see 8 U.S.C. § 1324(a)(1)(B) (Supp.1989); 18 U.S.C. § 2 (1969). Rivera agreed to plead guilty to count six of the indictment on the conditions that the government would dismiss the remaining counts and would "not ... pursue any charges against [Rivera] for intimidation of any of the Government witnesses...." Based on these conditions, Rivera pleaded guilty to count six on April 22, 1988, the district court ordered a presentence investigation, and the district court set sentencing for June 24, 1988. The presentence investigation report (the "presentence report" or the "report"), dated June 15, 1988, included information that Rivera had intimidated witnesses. The witness intimidation information included in the report was one of the reasons why Rivera attempted to withdraw his guilty plea at the sentencing.[1] On July 27, 1988, the district court denied Rivera's motion to withdraw his guilty plea and rescheduled Rivera's sentencing for August 4, 1988.

At the sentencing, Rivera made a motion for the district court to reconsider his motion to withdraw his guilty plea, and the district court denied the motion and sentenced Rivera. Refering to the Sentencing Guidelines ("Guidelines"), the district court found that Rivera had committed a crime constituting an offense level of nine. Concerning adjustments of that offense level, Rivera objected to the presentence report

---

1. On July 7, 1988, Rivera filed a written motion to withdraw his guilty plea, stating four grounds for the motion: (1) he denied threatening material witnesses and wanted to be tried on such charges, (2) he denied being an organizer of the crime, (3) he stated that the aliens were given preferential treatment in exchange for testifying against him, and (4) he was forced to plead guilty and wanted a trial on all counts of the indictment.

on the basis that it stated that Rivera had threatened to kill a material witness and that, therefore, Rivera's offense level should be upgraded two points for obstruction of justice. The district court, however, found that Rivera had obstructed justice and raised Rivera's offense level two points. The district court also raised Rivera's offense level two points because Rivera had prior convictions for smuggling aliens—bringing the offense level to thirteen. The district court further found that Rivera was not an organizer and that Rivera had accepted responsibility for his crime. Refering to this latter finding, the district court stated that Rivera's offense level should be adjusted downward by two points but failed to make the adjustment. If the district court had given Rivera credit for accepting responsibility, Rivera's offense level would have been reduced to eleven. Instead, the district court stated that Rivera's offense level was thirteen. The district court then determined that Rivera's criminal history—totaling eighteen points—fell into category VI. Finally, the district court departed from the sentencing guidelines on the basis of Rivera's extensive criminal history and sentenced Rivera to the maximum penalty allowed by statute —five years imprisonment.[2] Rivera filed a timely notice of appeal.

## II.

On appeal, Rivera argues that (1) the indictment was fatally defective because it failed to allege the requisite criminal intent, (2) the government did not comply with its plea bargain agreement and, therefore, Rivera should be allowed to withdraw his guilty plea, and (3) the district court made an erroneous finding of fact under the Guidelines and miscalculated his offense level under the Guidelines. We address each of these arguments in turn.

### A. *Indictment*

Count six of the indictment, to which Rivera pleaded guilty, is as follows:

*Count Six*

From on or about February 2, 1988, to on or about February 4, 1988, in the Southern District of Texas and within the jurisdiction of the Court, Defendants

ROBERTO RIVERA, MIGUEL ALFREDO ARROYO–RAMIREZ, and JOSE RODRIGUEZ–CORONADO,

in reckless disregard of the fact that Jesus Nicolas Pixabaj–Chavez was an alien who had entered the United States in violation of law, did knowingly transport such alien in furtherance of such violation of law within the United States, that is, from near Brownsville, Texas, to near Falfurrias, Texas, by means of a motor vehicle.

[Violation: Title 8, United States Code, Section 1324(a)(1)(B), and Title 18, United States Code, Section 2]

The relevant statute to this appeal and one of the statutes on which count six was based states:

(a) Criminal Penalties

  (1) Any person who—

    (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

    shall be fined in accordance with Title 18, or imprisoned not more than five years, or both, for each alien in respect to whom any violation of this paragraph occurs.

8 U.S.C. § 1324(a)(1)(B). Rivera argues that count six of the indictment is fatally defective because the indictment charged Rivera with *knowingly* transporting an undocumented alien in furtherance of violation of the law instead of charging Rivera with *willfully* transporting an undocumented alien in furtherance of violation of the law. Thus, Rivera asserts that "willful" is an essential element of the crime

---

**2.** The district court also imposed on Rivera a mandatory special assessment of fifty dollars.

and that, therefore, the omission of "willful" in the indictment renders the indictment fatally defective.

■ A defect in an indictment is jurisdictional, and such a defect is not waived by a guilty plea.[3] *United States v. Morales-Rosales*, 838 F.2d 1359, 1361–62 (5th Cir.1988). A criminal indictment "must be a 'plain, concise, and definite written statement of the *essential* facts constituting the offense charged.'" *Id.* at 1361 (emphasis in original) (quoting Fed.R.Crim.P. 7(c)(1)). "An [indictment] that fails to allege each material element of an offense fails to charge that offense." *Id.*

"The starting place for any determination of whether the charged conduct proscribed by such a statute is a reading of the language of the charging instrument and the statute itself." *Id.* The only state of mind explicitly mentioned in the statute is the requirement that the defendant know or be in reckless disregard of the fact that the alien is illegally in the country. An intent to further such violation of the law is implied in the language "transports ... in furtherance of such violation of law...." The indictment actually goes beyond the statutory language by using "knowingly transport."[4]

■ Our recent decision in *Morales-Rosales* further assists our inquiry into the necessary elements that an indictment must allege to charge a person with the crime stated in section 1324(a)(1)(B). As *Morales-Rosales* states, "[t]he statute [section 1324(a)(1)(B)] clearly states that an offense is committed when an individual (1) knows that the alien he transports has entered the United States in violation of the

law and (2) transports the alien in order to further that violation." *Id.* In *Morales-Rosales*, we found that the criminal information charged the defendant with the first element of the offense but did not charge him with the second element of the offense—"that he acted willfully in furtherance of the alien's violation of the law." *Id.* Despite the use of the word "willfully" in *Morales-Rosales*, a close reading of that case and of *United States v. Merkt*, 764 F.2d 266 (5th Cir.1985), on which the *Morales-Rosales* court relies, indicates that only the statutory language "in furtherance of such violation of law" is required to be alleged in an indictment. Furthermore, in both *Morales-Rosales* and *Merkt* we have held that "willful transportation" is not a violation of section 1324(a)(1)(B). Rather, an essential element of section 1324(a)(1)(B) is the existence of "a direct and substantial relationship between the transportation and its furtherance of the alien's presence in the United States." *Morales-Rosales*, 838 F.2d at 1361; *Merkt*, 764 F.2d at 271 (quoting *United States v. Moreno*, 561 F.2d 1321, 1323 (9th Cir.1977)). If the defendant's act of transporting an illegal alien is "only incidentally connected to the furtherance of the violation of law," it is "too attenuated to come within the boundaries of [the statute]." *Merkt*, 764 F.2d at 271 (quoting *Moreno*, 561 F.2d at 1322). Charging a knowing state of mind rises above an incidental connection and establishes a direct and substantial relationship between the transportation and its furtherance of the violation of law.

---

**3.** Since a defect in an indictment is jurisdictional, we will address Rivera's argument despite the fact that he did not raise the argument below. *United States v. Morales-Rosales*, 838 F.2d 1359, 1362 (5th Cir.1988). On the other hand, because Rivera "raises the issue for the first time on appeal, we are constrained to view the indictment with maximum liberality." *United States v. Edrington*, 726 F.2d 1029, 1031–32 (5th Cir.1984).

**4.** The language in the indictment is also consistent with the legislative history of the statute. The Committee is convinced that [judicial confusion over the statute's requisite state of

mind] must be [ended]. Without the threat of criminal prosecution, there is no effective way to deter potential transporters from inundating U.S. ports of entry with undocumented aliens.... Accordingly, the bill clarifies that a person who knowingly transports an undocumented alien to any place in the United States will be subject to criminal prosecution if that person knew the alien was undocumented or acted with willful blindness concerning the alien's immigration status.
Immigration Reform and Control Act of 1986, H.R. No. 99–682(I), *reprinted in* 1986 U.S.Code Cong. & Admin.News 5649, 5670.

■ Finally, although a statutory citation in an indictment cannot be substituted for setting forth the elements of the crime, a statutory citation, as in the present case, does reinforce other references within the indictment. *United States v. Campos-Asencio*, 822 F.2d 506, 508 (5th Cir.1987).

We therefore find that an indictment which alleges that a defendant "in reckless disregard of the fact that ... an alien ... entered the United States in violation of the law, ... did knowingly transport such alien in furtherance of such violation of law ..." sets forth the necessary elements to charge a defendant with the crime stated in section 1324(a)(1)(B).

### B. *Plea Bargain*

■ Rivera next asserts that the government breached the second portion of its plea bargain agreement—"not to pursue any charges against [Rivera] for intimidation of any of the Government witnesses"—when the government provided information that Rivera had threatened witnesses to the probation officer[5] who, in turn, reported the information in the presentence report and recommended a two point increase of Rivera's offense level based on the information. Because the government breached its plea bargain agreement, Rivera argues, the district court erred in denying Rivera's motion to withdraw his guilty plea, or in the alternative, the district court erred in not requiring specific performance of the agreement. *See Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Concluding that the government did not breach its plea bargain agreement, we find that the district court neither abused its discretion in refusing to allow Rivera to withdraw his plea nor abused its discretion in refusing to require specific performance of the agreement.

The government's promise was simply a promise not to pursue charges of witness intimidation. Such a promise did not imply that the government would not supply the parole officer with information for sentencing concerning witness intimidation.[6] *See United States v. Prince*, 868 F.2d 1379, 1385 (5th Cir.1989) (the government did not break its plea bargain agreement by making a sentence recommendation when the government promised that it would not bring further charges if the defendant pleaded guilty).

■ Furthermore, Rivera gave no indication at his rearraignment that he understood the plea bargain to include a promise by the government not to provide the information about witness intimidation to the parole officer. Rivera's attorney stated that his understanding was that the government promised not to pursue any witness intimidation charges against Rivera and that he explained the plea bargain to Rivera in those terms. Also in his rearraignment, Rivera told the district court that there was no agreement as to a sentence. As in *United States v. Dickson*, 712 F.2d 952, 955 (5th Cir.1983), the district court in the present case certainly provided Rivera with an opportunity to clarify what he believed the government's promise to be.

Finally, a logical application of our previous decisions on this subject compels our conclusion.[7] In *Prince*, we held that a

---

**5.** Although nothing in the record explicitly states that the government was actually the provider of this information, the government's counsel stated at oral argument that this was most likely the case.

**6.** Rivera argues that the district court made a factual finding during the sentencing hearing that the government had promised not to "say anything about" Rivera intimidating witnesses. When the government began to explain why it thought that obstruction of justice points were merited, the district court did state that "you [the government] should [not] say anything about it. You said you would not pursue the

intimidation—any intimidation charges." We cannot conclude, however, that such a statement amounts to a fact finding by the district court that the government promised not to supply the probation officer with the information concerning witness intimidation. Even if we could conclude that the district court made such a finding, that finding would be clearly erroneous. *See infra* II B.

**7.** Rivera's reliance on a Seventh Circuit case, *United States v. Cook*, 668 F.2d 317 (7th Cir. 1982), is misplaced in light of Fifth Circuit precedent, *see infra* II B. Furthermore, *Cook* is distinguishable from the present case on the

promise by the government not to bring further charges in exchange for a guilty plea was not broken when the government recommended a sentence. *Prince*, 868 F.2d at 1385. In *United States v. Avery*, 621 F.2d 214 (5th Cir.1980), *cert. denied*, 450 U.S. 933, 101 S.Ct. 1396, 67 L.Ed.2d 367 (1981), we concluded that when the government gives requested information to the probation officer preparing the presentence report, it does not breach its promise to stand mute and make no recommendation at sentencing. *Id.* at 216; *see also Dickson*, 712 F.2d at 954–55 (the government did not breach its promise to stand mute when it provided its files to the probation officer upon request). Finally, in *United States v. Block*, 660 F.2d 1086 (5th Cir. Unit B Nov.1981), *cert. denied*, 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982), we found that no breach of the plea bargain agreement had occurred when the government had promised not to take a position on the sentence to be imposed, yet, at the sentence hearing, the government corrected a claim made by the defendant that he had paid certain tax returns. We explained, "Efforts by the Government to provide relevant factual information or to correct mistatements are not tantamount to taking a position on the sentence...." *Id.* at 1091. We went further and held that "the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court." *Id.* at 1092.

Given the actual promise made by the government in the present case, Rivera's understanding of the promise, and the case law addressing such promises, we conclude that the government did not breach its plea bargain agreement not to bring witness intimidation charges against Rivera when it provided the probation officer with the witness intimidation information. Therefore, the district court did not abuse its discretion in refusing to allow Rivera to withdraw his guilty plea or in refusing to require specific performance of the putative agreement.

## C. Sentence

Rivera's final argument is that the district court made an erroneous finding of fact under the Guidelines and miscalculated his offense level under the Guidelines. Because the reasonableness of the district court's departure under the Guidelines hinges on the district court's correct determination of the recommended range of sentencing under the Guidelines, *United States v. Roberson*, 872 F.2d 597, 608 (5th Cir.1989), we must first determine whether the district court correctly determined the recommended range under the Guidelines. "The recommended range provides a point of reference for the sentencing court; it is a range of sentences that the Commission determined is reasonable and against which the sentencing court may measure its choice of sentence." *Id.*

### 1. Application of the Guidelines

■ The district court correctly determined that Rivera's crime carried an offense level of nine. U.S. Sentencing Commission, *Sentencing Guidelines Manual* [hereinafter *Sentencing Guidelines*] § 2L1.1 (Jan. 15, 1988). The district court also correctly increased Rivera's offense level by two points because Rivera had previously been convicted for smuggling unlawful aliens into the United States. *Sentencing Guidelines* § 2L1.1(b)(2).[8] The district court then found that Rivera had obstructed justice by intimidating witnesses and, therefore, added two more points to the offense level, *Sentencing Guidelines*

---

basis of the difference between the promises made in the two cases. In *Cook*, the government promised that it would "not offer anything at all in aggravation" of the defendant's sentence, and the court determined that it breached its promise by allowing aggravating information in its possession to be included in the probation officer's presentence report. Because the promise in *Cook* is *significantly* different from the promise in the present case, we find Rivera's reliance on *Cook* to be unpersuasive.

8. "The adjustment under § 2L1.1(b)(2) for a previous conviction is in addition to any points added to the criminal history score for such conviction...." *Sentencing Guidelines* § 2L1.1, Application Note 4.

§ 3C1.1, bringing the total offense level to thirteen. Rivera does take issue with this adjustment and argues that the district court's finding that Rivera obstructed justice was clearly erroneous.

Rivera is correct in asserting that "[f]indings of fact that underlie the district court's sentence are reviewed under a clearly erroneous standard." *United States v. Velasquez–Mercado*, 872 F.2d 632, 635 (5th Cir.1989) (quoting *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *clarified on rehearing*, 868 F.2d 807, 808–09 (5th Cir.1989)); *accord* 18 U.S.C. § 3742(e) (Supp.1989). Furthermore, whether a defendant obstructed justice is a factual determination. *Velasquez–Mercado*, 872 F.2d at 635.

A nonexclusive list of conduct which may provide a basis for applying the two point adjustment under section 3C1.1 includes "threatening, intimidating, or otherwise unlawfully attempting to influence a ... witness ... directly or indirectly." *Sentencing Guidelines* § 3C1.1, Application Note 1(d). The presentence report stated that "[w]hile in custody at Hidalgo County Jail, the defendant [Rivera] threatened and intimidated a material witness when he ... stated [sic] was going to kill the material witness if the material [sic] would testify against defendant Rivera in Court." Furthermore, the above statement was based on depositions of government witnesses, and those depositions, or at least the pertinent parts of them, were made available to the district court. We therefore conclude that the district court's finding was not clearly erroneous and that it correctly adjusted Rivera's offense level upward two points for obstruction of justice. *See Roberson*, 872 F.2d at 609 (if the district court finds that the defendant obstructed justice, the upward adjustment of two points is mandatory).

The district court next made a finding that Rivera accepted responsibility for his crime. *Sentencing Guidelines* § 3E1.1. Based on such a finding, the Guidelines direct the district court to reduce the offense level by two—making Rivera's offense level eleven. We agree with Rivera that *given the district court's finding*, the district court erred when it failed to reduce Rivera's offense level by two. Once the district court determined that Rivera had obstructed justice, however, it could not, *as a matter of law*, determine that Rivera also accepted responsibility for his crime. *See Roberson*, 872 F.2d at 610; *Velasquez–Mercado*, 872 F.2d at 637; *Sentencing Guidelines* § 3E1.1, Application Note 4. Because the district court erred *as a matter of law* in finding that Rivera accepted responsibility for the crime, the offense level calculation of thirteen was correct, and the district court's failure to reduce Rivera's offense level by two, based on its finding, was harmless error.

Finally, the district court found that Rivera's criminal history record—a total of eighteen points—fell into category VI of the criminal background categories in the Guidelines. *See Sentencing Guidelines* § 5A—Sentencing Table. Rivera does not contest this finding on appeal. The intersection of the offense level, thirteen, and of the criminal history category, VI, shows that the recommended sentence for Rivera was 33–41 months, which is the sentence that the district court concluded the Guidelines recommended. The district court, however, also concluded that Rivera's case warranted a departure from the Guidelines on the basis of Rivera's criminal history. Accordingly, the district court sentenced Rivera to the statutory maximum of 60 months.

2. Departure From the Guidelines

A district court may depart from the Guidelines if it "finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Commission in formulating the guidelines...." *Roberson*, 872 F.2d at 601 (quoting 18 U.S.C. § 3553(b) (Supp.1989)). "Whenever [the district court] sentences a criminal defendant, a court must 'offer reasons explaining why the departure is justified in terms of the policies underlying the [Guidelines].'" *Id.* (quoting *Mejia–Orosco*, 867 F.2d at 221). A district court's discretion to depart from the Guidelines is broad,

and we review a departure to determine whether the departure was reasonable, "having regard for (A) the factors to be considered in imposing a sentence ... and (B) the reasons for the imposition of the particular sentence, as stated by the district court...." *Id.* at 602 (quoting 18 U.S.C. § 3742(e)(3) (Supp.1989)).

 The district court's articulated reason for departure was that category VI underrepresented Rivera's extensive criminal history.[9] A district court may depart from the recommended range on the basis that "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct...." *United States v. Fisher,* 868 F.2d 128, 129 (5th Cir.1989); *accord United States v. De Luna–Trujillo,* 868 F.2d 122, 124–25 (5th Cir.1989); *Sentencing Guidelines* § 4A1.3. The district court noted that the minimum level for category VI is thirteen points while Rivera's criminal history record totaled eighteen points—a full five points higher than the minimum level. In addition, section 4A1.3 of the Guidelines provides information which may be considered in determining whether the criminal history category is adequate. Section 4A1.3(b) states that a district court may consider "prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions." The district court specifically mentioned Rivera's conviction for murder, a sentence of seven years, as one of the reasons for departure. Under these circumstances, we find that the district court's departure based on Rivera's extensive past criminal conduct was reasonable.

### III.

For the foregoing reasons, we find that the indictment under which Rivera was charged was not defective. We hold that the district court did not abuse its discretion in refusing to allow Rivera to withdraw his guilty plea or in refusing to require specific performance of the putative agreement because we conclude that the government did not breach its plea bargain agreement with Rivera. We further hold that the district court's finding of fact that Rivera obstructed justice was not clearly erroneous and that the district court erred as a matter of law in finding that Rivera accepted responsibility for his crime. Because the district court erred as a matter of law, its miscalculation under the Guidelines was harmless error. Finally, the district court's departure from the Guidelines was reasonable. We therefore AFFIRM the conviction.

---

**9.** Category VI represents the most active criminal past. Therefore, the district court could not have advanced to a higher criminal history category, *see Sentencing Guidelines* § 4A1.3; *United States v. Lopez,* 871 F.2d 513, 514–15 (5th Cir. 1989).