UNITED STATES of America, Plaintiff–Appellee,

v.

Orscini L. BEARD, Defendant–Appellant.

No. 89–3720.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1990.

Before REAVLEY, DUHÉ, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Appellant, Orscini L. Beard (Beard) appeals from a sentence of twenty-seven months imprisonment, two years supervised release and a fine of $103,371.35 resulting from his conviction following a plea of guilty to a charge of making a false statement under penalty of perjury in a bankruptcy proceeding, in violation of 18 U.S.C. § 152. Beard appeals the imprisonment and fine portion of his sentence. Finding no error in the sentence of imprisonment imposed, we affirm that portion of the sentence. We vacate and remand for recalculation of the fine.

### I.

Following an investigation conducted in relation to Beard's bankruptcy proceeding, Orscini L. Beard was indicted on charges of two counts of making a false declaration under penalty of perjury in a bankruptcy proceeding in violation of 18 U.S.C. § 152 and four counts of perjury in violation of 18 U.S.C. § 1623. Pursuant to a plea agreement, Beard pled guilty to one count of making a false statement under penalty of perjury in a bankruptcy proceeding. All other charges in the indictment were dismissed. Following a presentencing investigation, the court sentenced Beard to twenty-seven months imprisonment with two years supervised release, and ordered him to pay a fine of $103,371.35. After he was sentenced, Beard filed a timely notice of appeal. Beard claims the district court applied the incorrect sentencing guideline to his offense, erred in adding to his base offense level for more than minimal planning and obstruction of justice, and erred in refusing to reduce the base offense level for acceptance of responsibility. Beard also claims that both his fine and sentence are excessive and imposed without adequate reasons.

Alcide J. Gray, Gray, Spruel & Burks, Lake Charles, La., for defendant-appellant.

Ian F. Hipwell, Asst. U.S. Atty. and P. Raymond LaMonica, U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

### II.

Orscini Beard, a practicing attorney, filed bankruptcy in May, 1987. A trustee was

appointed for his bankruptcy estate in March, 1988.

On July 12, 1988, Beard received a check for $175,000 for services rendered in defending a criminal suit. Shortly after the check was received, Beard and his mother-in-law, went to a Baton Rouge, Louisiana bank and negotiated the check. Beard obtained a $25,000 interest bearing certificate of deposit issued in his mother-in-law's name and three $50,000 cashier's checks made payable, respectively, to his mother-in-law, his sister-in-law, and himself. Beard and an unidentified man later traveled to Union Security Bank and Trust Company in Gonzales, Louisiana where Beard negotiated his $50,000 cashier's check, depositing $20,000 in a new checking account and placing the remaining $30,000 in currency in the unidentified man's briefcase.

On July 29, 1988, certain schedules concerning Beard's bankruptcy were filed in the Bankruptcy Court. However, the required "Statement of Financial Affairs" was not furnished to the court until August 8. On the statement of financial affairs document Beard answered "No" to question eleven, "Is any other person holding anything of value in which you have any interest?" This document was signed by Beard as an unsworn statement under penalty of perjury, in which he certified that he had read the questions listed on the document and that they were true and correct to the best of his knowledge, information and belief.

Investigation of this matter revealed that the answer given by Beard to question eleven was false. The FBI agent who investigated testified that in the "Meeting of Creditors" held on August 9, Beard stated that the money was intact and that none of it had been spent, even though by that time, most of it had been distributed to various family members. Beard had also requested, received and spent portions of the monies he had given to his mother-in-law and sister-in-law, and all of the funds

remaining from the $50,000 cashier's check issued to him. On August 10, in open court before District Court Judge Frank J. Polozola, Beard refused to reveal the location of the funds. After being ordered to produce the funds, Beard could produce only $106,500 of the original $175,000.

Beard acknowledged that he had negotiated the fee check and answered the question regarding property in the hands of third parties falsely and fraudulently, then pled guilty to violating 18 U.S.C. § 152.

After reviewing the presentence report, the court found that no upward departure from the guidelines was necessary. Using the Statutory Index (the Index) of the United States Sentencing Guidelines Manual (the Guidelines) [1] the court applied Guideline 2F1.1, "Fraud and Deceit" as the correct one for violation of 18 U.S.C. § 152. The base offense level is six, to which the court added six levels under Guideline 2F1.1(b)(1)(G) for loss of the $175,000. The court also found that the offense involved more than minimal planning and accordingly increased the offense level by two points pursuant to Guideline 2F1.1(b)(2). The court also determined that Beard had obstructed justice and added two more levels pursuant to Guideline 3C1.1. The court refused to award a two-level reduction for acceptance of responsibility, but disagreed with the probation officer's recommendation that an additional two points be added because of Beard's role in the offense. Therefore, Beard's final offense level was sixteen.

## III.

■ This court will uphold a sentence imposed by the district court unless it was imposed in violation of the law, imposed as a result of incorrect application of the sentencing guidelines, or was outside the range of applicable sentencing guidelines and is unreasonable. *United States v. Buenrostro*, 868 F.2d 135, 136–37 (5th Cir. 1989) (citing 18 U.S.C. §§ 3742(d) & (e)). We "accept the findings of fact of the

---

**1.** Beard was sentenced in October 1989, therefore the June 15, 1988 amendments to the Sentencing Guidelines apply.

district court unless they are clearly erroneous." *Id.* at 137; *see also United States v. Otero,* 868 F.2d 1412, 1414 (5th Cir.1989). Findings of fact that establish mitigating or aggravating circumstances which may justify departures from the guidelines are therefore reviewed for clear error. *See United States v. Velasquez–Mercado,* 872 F.2d 632, 637 (5th Cir.1989). The only requirement is that the district court articulate its reasons for departing from the guidelines. *Id.*

## IV.

### A. Incorrect Guideline Applied

Beard argues that the district court erred in sentencing him under the "Fraud and Deceit" Guideline, 2F1.1 rather than the "Perjury" Guideline, 2J1.3. His argument rests on two grounds: (1) that the guideline most applicable to the conduct involved in his offense is the guideline for perjury and not fraud; and (2) that the court's use of the fraud guideline violated Beard's due process rights because punishment by fraud and deceit standards was not contemplated in the plea agreement. We find neither argument compelling.

### 1. Application of the Fraud Standard

■ Under the Sentencing Guidelines "§ 1B1.1(a) directs the court to look to the statute of conviction to determine the most appropriate offense guideline, while § 1B1.2(a) directs the court to look to the offense of conviction in making that determination." T. Hutchison & D. Yellen, *Federal Sentencing Law and Practice* 21 ann. 3 (1989) [hereinafter *Sentencing Practice* ] (citing U.S.S.G. §§ 1B1.1(a) & 1B1.2(a)). Beard argues this means that even though the Statutory Index specifies the guideline to apply, the court should ignore the referenced guideline and choose the one "closest" to the conduct contemplated in the statute of conviction. In this case, Beard argues, the perjury guideline is the closest

to the conduct contemplated in the statute of conviction because 18 U.S.C. § 152 uses the phrase "under penalty of perjury." He claims that the offense of conviction, making a false statement, is more similar to perjury than it is to fraud; therefore, perjury is the most applicable guideline to the conduct. Beard further argues that applying a fraud standard is incorrect because the status of the $175,000 was unknown at the time of his offense; therefore, he could not have committed a fraud upon his creditors because the funds, or at least most of the funds, belonged to him.

■ Beard incorrectly characterizes his offense. He was under the duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that asset is ultimately determined to be outside of the bankruptcy estate. *See United States v. Cherek,* 734 F.2d 1248, 1254 (7th Cir.1984). His failure to disclose the existence of the $175,000 and his continued attempts to conceal its presence constituted a fraud upon the court. Therefore, ownership of the assets is irrelevant to the selection of the correct guideline, in light of Beard's duty to disclose the existence of the asset to the bankruptcy court. Fraud is therefore a part of Beard's offense of conviction.

■ It is clear to us from the language in sections 1B1.1(a) and 1B1.2(a) that the Commission intended the "choice" of most applicable guideline to apply only when two or more guideline sections are listed in the Index for the statute of conviction. *See* U.S.S.G. § 1B1.1(a) (June 15, 1988) ("If more than one guideline is referenced for the particular statute, select the guideline most appropriate for the conduct of which the defendant was convicted"). In such an instance, the court must choose the most appropriate guideline *from among the ones listed,* using the conduct for which the defendant was convicted to determine the choice.[2] The sentencing

---

2. Hutchison and Yellen note that because the Guidelines do not mandate the use of the referenced guideline, the court's selection of another guideline would not be a departure. But, they also note that language in the commentary to

the Statutory Index indicates that the Commission "expects that the court[s] will use the referenced section except in extraordinary circumstances." *Sentencing Practice, supra,* at 21 annot. 3.

court is not to look beyond the referenced guidelines listed in the Index unless only one guideline is listed *and* that guideline is deemed inappropriate in light of the statute or offense of conviction. *See Sentencing Practice, supra* at 21 & 25 n. 2. Only when the Index lists a single guideline should the court look beyond the guideline referenced. Therefore, if more than one guideline is referenced in the Index, the court must choose the most appropriate guideline of those listed, based on the offense of conviction.

In the instant case, the statutory index references two guidelines for convictions under 18 U.S.C. § 152. The first, 2B4.1, deals with commercial bribery and is clearly inappropriate to Beard's offense of conviction. The second, 2F1.1, deals with offenses involving fraud and deceit.

Guideline 2F1.1 is the more appropriate guideline for two reasons. First, Beard's offense specifically included fraud as a part of the offense because Beard pled guilty to knowingly and *fraudulently* making a false statement under the language of the statute. *See* 18 U.S.C. § 152. Second, irrespective of the statute of conviction, his conduct constituted fraud because he attempted to conceal funds from the bankruptcy court while he was under a duty to reveal their existence and allow the court to determine their ownership. Therefore, the only appropriate "choice" between the two guidelines referenced is Guideline 2F1.1. Furthermore, the Statutory Index does not list Guideline 2J1.3, the perjury guideline, in reference to violation of 18 U.S.C. § 152. Clearly, perjury was not contemplated as a sentence for Beard's offense.

### 2. Due Process

■ Beard's due process argument is even less compelling. He argues that he "knowingly and intelligently" pled guilty to an offense subjecting him to a penalty of perjury; therefore, to sentence him under any other guideline would be clearly erroneous on its face and violate his due process rights. Beard argues that the crucial issue is whether the term imposed by the sentencing judge "comport[s] with the reasonable understanding and expectations of the defendant as to the sentence for which he had bargained." *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir.1982). He also argues that, in order for a guilty plea to stand, it must be "voluntarily, knowingly and intelligently given." *Boykin v. Alabama*, 395 U.S. 238, 241, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). According to Beard, he pled guilty under the assumption that he would be sentenced under a perjury standard and not fraud. He therefore knowingly and intelligently bargained for that sentence and the court erred in holding him accountable for fraud.

We disagree. First, when Beard pled guilty he acknowledged that no promises or predictions were made as to what his sentence would be and that no agreement limiting or enhancing his rights were made. No one promised that Beard would be sentenced by a perjury standard and in fact no promises concerning his sentence were made at all. Therefore, his "expectation" that he would be sentenced under the perjury guideline was fostered solely by his own false hopes.

■ Second, in the presentencing report and in the sentencing hearing Beard admitted facts that established a factual basis for a finding of fraud. Under the Guidelines, if in a guilty plea a defendant stipulates to facts that establish a more serious offense than the offense of conviction, that person may be sentenced to the higher offense. U.S.S.G. § 1B1.2(a). Sentencing a person under this rule does not violate due process because the Sentencing Guidelines are public records that put a defendant on notice that he could be sentenced under this rule. *See United States v. Strong*, 891 F.2d 82, 85 (5th Cir.1989). Once Beard stipulated and acknowledged facts which established fraud, the district court was free to consider those facts when fashioning his sentence. *See Id.*

For the above stated reasons we hold that the district court correctly applied Guideline 2F1.1, fraud and deceit, to Beard's offense because (1) fraud is an element of Beard's offense therefore mak-

ing 2F1.1 the only proper choice of sentences referenced in the Statutory Index, and (2) Beard stipulated to facts which established his fraudulent conduct, so that even if fraud and deceit were not the sentence referenced in the Index it was appropriate for the court to sentence Beard to the higher fraud standard under Guideline 1B1.2(a) and our holding in *Strong.*

### B. Obstruction of Justice

■ Beard also argues that the district court incorrectly added two points to his base offense level for obstruction of justice. Under Guideline 3C1.1 if the defendant "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of his offense," the court may increase the offense level by two. U.S.S.G. § 3C1.1. The district court found that Beard's refusal to furnish the probation officer with information concerning his financial status constituted a deliberate obstruction of justice. Beard argues that his mere silence on the matter is not sufficient to warrant a two point enhancement even if that silence results is an inaccurate presentencing report. *Sentencing Practicing, supra* at 277 annot. 4.

■ There is sufficient evidence, however, to show that mere silence is not the case here. The district court found that Beard deliberately refused to supply information to the probation officer that was readily available to Beard and necessary for the probation officer to determine Beard's ability to pay fine or restitution. That the court found this to be a willful obstruction of justice or an attempt to impede the investigation of the offense is not clearly erroneous. It was also proper for the court to rely on the presentencing report's construction of the evidence to resolve this factual issue, rather than relying on the defendant's version of the facts. *See United States v. Lopez–Escobar,* 884 F.2d 170, 173 (5th Cir.1989).

### C. Acceptance of Responsibility

■ Beard contends that the district court erred in refusing to give a two point reduction for acceptance of responsibility. The Guidelines allow a two level reduction for accepting responsibility for the offense where the defendant "clearly demonstrated a recognition and affirmative acceptance of personal accountability." U.S.S.G. § 3E1.1. Guideline 3E1.1 requires a showing of sincere contrition on the defendant's behalf to warrant the reduction. *See United States v. Reed,* 882 F.2d 147, 150 (5th Cir.1989). A trial court's determination of contrition, or lack thereof, on the part of the defendant is entitled to great deference and should not be disturbed unless it is without foundation. *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989); *see also* U.S.S.G. § 3E1.1 application note 5.

In the instant case, the district court determined that, from the facts available, it was clear that Beard had not accepted responsibility for his offense merely because he pleaded guilty. *See* U.S.S.G. § 3E1.1(c). The court agreed with the presentence report that Beard did not come forth and indicate that he had violated the law nor did he express regret for having done so. The district court agreed with the probation officer's conclusion in the presentencing report that Beard did not affirmatively accept responsibility for his offense. We cannot conclude that such a finding was clearly erroneous.

### D. More than Minimal Planning

■ Beard argues that the court erred in adding two levels for finding that his offense involved more than minimal planning. More than minimal planning is defined in the guidelines as "more planning than is typical for commission of the offense in a simple form." U.S.S.G. § 1B1.1 application note (1)(f). The district court found that there was a complex scheme involving multiple participants used by Beard to conceal the existence of the $175,-000. In the instant case, there was sufficient evidence to show that Beard's actions went beyond merely opening an account to hold the money, but involved a systematic scheme involving multiple banks and many different parties. Because the evidence

sufficiently establishes Beard's role in orchestrating dispersal of the funds, the district court did not err in finding that Beard's offense involved more than minimal planning.

### E. Excessive Fine and Sentence

#### 1. Sentence.

■ Beard's final argument is that the fine and sentence assessed by the district court were excessive and imposed without adequate reason. The court specifically refused to upwardly depart from the guidelines, but was satisfied to impose the maximum sentence allowable.

The sentencing guidelines specifically allow a court to take into account any information regarding the background, character, and conduct of the defendant in determining the actual sentence to impose. U.S.S.G. § 1B1.4. In the instant case, the district court took into account the fact that Beard was a practicing attorney with a duty to the court, who violated a judicial trust by committing a fraud upon the court. We find these adequate and appropriate reasons for imposing the maximum sentence allowable under the Guidelines. Therefore, the district court did not err in imposing a twenty-seven month prison term.

#### 2. Excessive Fine.

The district court, following Guideline 5E4.2, calculated Beard's fine as a total amount of $103,371.35 consisting of: $68,500, the pecuniary gain to Beard for commission of the offense; $32,671.35, the cost of imprisonment; and $2,200, the costs of supervised release. The court reasoned that because $68,500 of the $175,000 was not returned to the court, that amount was gained by Beard through the commission of his offense.

■ Beard argues that including the $68,500 was improper because he received no "gain" from his offense. He claims that the entire amount of the fee check rightfully belonged to him and not the bankruptcy estate. Therefore, he concludes, there can be no "pecuniary gain" to

him from keeping or spending his own money.

Beard has a valid argument. Guideline 5E4.2 provides that fines for individuals are to be calculated either from the fine ranges listed on the table in 5E4.2(c)(3) or on the basis of pecuniary gain to the defendant. The loss suffered by the victim does not enter into this calculation.

Unfortunately, the Guidelines do not define the term *gain* but merely state that the term is expected to be used "flexibly and consistently with [its] use in the criminal code." U.S.S.G. § 5E4.2 background comment. The criminal code, 18 U.S.C. § 3571, is equally devoid of a cognizable definition of "gain." Therefore, it is up to the sentencing court to define the term as it applies to the particular case under consideration. One thing is clear: ownership of the funds is crucial to determining whether a defendant recognized pecuniary gain from his offense because a defendant cannot "gain" what he already owns. In this respect, calculation of the fine differs from calculation of the term of incarceration.

In the instant case, the district court did not address the status of the funds as being Beard's personal funds or as belonging to the bankruptcy estate. It should have.

If the funds properly belonged in the bankruptcy estate, then the amount Beard retained was a windfall and thus a "gain" as contemplated in Guideline 5E4.2. If however, the funds belonged to Beard and were outside of the bankruptcy estate, then Beard gained nothing by retaining his own money. That Beard withheld this amount from the court is irrelevant for purposes of assessing the fine, because the language of the Guideline permits the court to fine a defendant for his "pecuniary gain" and not for any losses caused by his offense. *See* U.S.S.G. § 5E4.2(c).

■ As of this appeal, the bankruptcy court had not ruled on the ownership of the $175,000 fee check. If that court has determined that the funds belong solely to the bankruptcy estate, or should it so determine in the future, then the fine as-

sessed in the district court would be proper.[3] If however, that court has determined that any portion of the funds belonged to Beard, or should it so determine in the future, the district court must recalculate Beard's fine based on the amounts belonging to Beard and to the estate respectively. We therefore vacate the district court's calculation and assessment of the fine.

▉ The district court had the option when it fined Beard either to calculate his fine based on his pecuniary gain *or* to use the amounts provided in the table in Guideline 5E4.2(c), based on Beard's overall offense level. Section 5E4.2 is written in the disjunctive so it is clear that the sentencing court in its discretion may use either method to calculate the fine, depending on the court's findings. Therefore, we remand for the district court to recalculate Beard's fine either from the fine table in effect at the time of Beard's sentencing or based on Beard's pecuniary gain once the bankruptcy court determines the ownership status of the funds.

We find no compelling reasons to impose a lesser fine or waive the fine in its entirety.

For the foregoing reasons the judgment of the district court is AFFIRMED on all points except assessment of the fine. We VACATE the portion of the judgment covering the amount of the fine and REMAND for proceedings in conformity with this decision.

---

**3.** This court, as well as the district court, are prohibited from preempting the judgment of the bankruptcy court in this matter. *See United States v. Jackson,* 836 F.2d 324 (7th Cir.1987).

Therefore, calculation of the fine based on Beard's pecuniary gain must be postponed until the bankruptcy court determines the status of the $175,000.