985 F.2d 554
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael WRIGHT, Defendant-Appellant.
 No. 92-5527.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 2, 1992
Decided: January 29, 1993
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-92-272-A)
 Joseph John McCarthy, DAWKINS, DELANEY, MCCARTHY & SENGEL, P.C., Alexandria, Virginia, for Appellant.
 Daniel Case Stark, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Richard Cullen, United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before RUSSELL and LUTTIG, Circuit Judges, and BUTZNER, SeniorJM
 PER CURIAM:
 
 OPINION
 
 1
 Michael Edwin Wright (Wright) was charged in a criminal complaint for making threatening and vulgar comments to Army Staff Sergeant Lori Bianchi (Bianchi) with the intent to intimidate or harass her in violation of 18 U.S.C. § 13. After all of the evidence was presented, the magistrate judge allowed the United States to amend its complaint to include language indicating that the crime alleged occurred within the special territorial confines of United States jurisdiction. Wright was found guilty and now appeals his conviction, arguing that the magistrate abused his discretion in allowing the government's amendment. We affirm.
 
 I.
 
 2
 Wright met Bianchi at a bar in Alexandria, Virginia, in March of 1992. Soon thereafter, he managed to obtain her address and phone number. Wright began driving by Bianchi's house and calling her at home. Initially, he made friendly advances which Bianchi uniformly declined. These rejections increased Wright's hostility. Wright then began using profane language during telephone conversations and refused to honor Bianchi's requests to leave her alone. Eventually, Wright's incessant telephone calls led Bianchi to change her number.
 
 
 3
 Wright subsequently began calling Bianchi at her place of employment, the Pentagon. When she refused to converse with him, he called Bianchi's superiors and accused her of being, among other things, a bisexual, a drug addict, and an undercover informer for drug investigations. Wright repeatedly phoned the Pentagon, and his accusations, language and threats grew increasingly more vehement. He told Bianchi's superiors that he would hurt Bianchi or arrange for his drug dealing acquaintances to break her knees, maim her or kill her. Wright also threatened other Pentagon personnel with physical violence.[1] While engaging in all these telephone conversations, Wright continued to use vulgar language liberally.
 
 
 4
 On May 18, 1992, a criminal complaint was filed by the United States charging Wright with a violation of 18 U.S.C.s 13. Title 18 U.S.C. § 13 reads:
 
 
 5
 Whoever within [the special maritime or territorial jurisdiction of the United States] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to like punishment.
 
 
 6
 The complaint alleged that the "act[s] ... punishable in another state" were Wright's phone calls, which violated Va. Code Ann. § 18.2-427 (Michie 1988). Section 18.2-427 of the Virginia Code provides:
 
 
 7
 If any person shall use obscene, vulgar, profane, lewd, lascivious, or indecent language, or make any suggestion or proposal of an obscene nature, or threaten any illegal or immoral act with the intent to coerce, intimidate, or harass any person over any telephone or citizen's band radio, in this Commonwealth, he shall be guilty of a Class 1 misdemeanor.2
 
 
 8
 The complaint alleged that the offense occurred in Stafford County, Virginia, where Bianchi resides. It also referred to an attached affidavit which asserted that the Appellant made threatening statements during calls to the Pentagon.[3] The complaint was approved by a magistrate, an arrest warrant was issued, and Wright was arrested.
 
 
 9
 No criminal information or indictment was filed. Wright was tried before a magistrate judge pursuant to the original complaint on May 27, 1992. See Fed. R. Crim. P. 58(b)(1). After the government closed its case, Wright took issue with the language in the complaint which indicated the crime took place in Stafford County. He asserted that the district court had no subject matter jurisdiction over the case because crimes committed solely in Stafford County, Virginia are outside the United States' special jurisdiction.
 
 
 10
 The United States initially took the position that the complaint, in its original form, contained facts sufficient for the district court to retain jurisdiction. The complaint explicitly referenced an affidavit by stating, "[s]ee attached affidavit" under a heading designated for facts upon which the complaint was based. The affidavit detailed the United States' allegations that Wright had made numerous threatening telephone calls to the Pentagon and Bianchi's residence. The Pentagon is indisputably within the special jurisdiction of the United States. However, in response to an invitation by the magistrate judge, the government moved to amend its complaint to change the situs of the offense from Stafford County to "in Stafford County and in the special maritime territorial jurisdiction of the United States in the Eastern District of Virginia." The court granted the motion to amend over Wright's objection, but inserted terms into the complaint which differed slightly from the government's request. It struck the reference to "Stafford County" and included language alleging the offense occurred in "Arlington County within the special maritime and territorial jurisdiction of the United States and the Eastern District of Virginia." This remedied any subject matter jurisdiction problem raised by the Appellant. Wright was thereafter convicted of violating 18 U.S.C. § 13.[4] The magistrate's order convicting Wright was affirmed by a district court on July 17, 1992.
 
 
 11
 Wright appeals, and argues that the United States magistrate abused his discretion in allowing the government to amend its complaint.
 
 II.
 
 12
 District courts have jurisdiction over offenses against the laws of the United States. 18 U.S.C. § 3231. In order to invoke federal jurisdiction in a criminal prosecution based upon 18 U.S.C. § 13, the United States had to allege (1) Wright committed an act violating Va. Code Ann. § 18.2-427, and (2) did so within the special maritime and territorial jurisdiction of the United States. The original criminal complaint alleged Wright violated § 18.2-427 by using vulgar and profane language during phone calls in the Eastern District of Virginia to threaten various individuals. This allegation satisfied the first requirement. The government's failure to allege that the crime charged took place within the United States' special jurisdiction, the second element of 18 U.S.C. § 13, is the focal point of this appeal.
 
 III.
 
 13
 Assuming, arguendo, that the special jurisdiction of the United States was not alleged initially, any deficiency in the complaint was cured by amendment. Courts have the authority to grant parties an opportunity to address or correct technical errors in pleadings. United States v. Blanchard, 495 F.2d 1329, 1332-33 (1st Cir. 1974) (not improper for judge to amend criminal information on his own motion, especially where specifics sought to be included, had already been incorporated by reference); see also Newman-Green, Inc. v. AlfonzoLarrain, 490 U.S. 826, 832 (1989) (appellate courts have authority in civil cases under Fed. R. Civ. P. 21 to dismiss dispensable nondiverse parties sua sponte in order to cure jurisdictional flaws); Miller v. Davis, 507 F.2d 308, 311 (6th Cir. 1974) (amendments to cure defective jurisdictional allegations broadly permitted in trial and appellate courts under 28 U.S.C. § 1653, absent prejudice to a party, to avoid dismissals on technical grounds).
 
 
 14
 Rule 7(e) of the Federal Rules of Criminal Procedure codifies the principle that a technical error in an information should be rectified by amendment, rather than dismissal, unless a new offense is added or the defendant will suffer prejudice. Rule 7(e) states:
 
 
 15
 The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.
 
 
 16
 Rule 7(e) Fed. R. Crim. P. (emphasis added). However, Rule 7(e) does not directly apply to this case; it only mentions informations.
 
 
 17
 In the case at hand, Wright was convicted under a criminal complaint, the use of which is authorized by Rule 58. Fed. R. Crim. P. 58.[5] Rule 58(a)(2) mandates that, in cases other than those involving petty offenses, "the other rules [of criminal procedure] govern except as specifically provided in this rule." Fed. R. Crim. P. 58(a)(2). Accordingly, because Wright's crime was not a petty offense,[6] the provisions of Rule 7 control the criminal complaint at issue.[7] Rule 7(e) expressly allows for the amendment of informations. See United States v. Wylie, 919 F.2d 969, 973 (5th Cir. 1990). This provision may not be utilized to amend an indictment. Id. ( citing Fredrick v. United States, 163 F.2d 536, 547 (9th Cir.), cert. denied, 332 U.S. 772 (1947)). Thus, Rule 7(e) embodies a significant distinction between the indictments and informations. In order to determine if Rule 7(e) is applicable, we must consider whether a criminal complaint should be treated as an information or indictment.
 
 
 18
 A brief comparison of the two types of charging documents recognized in Rule 7 illustrates that a criminal complaint is more analogous to an information than an indictment. Indictments and informations have identical purposes, serving to initiate formal criminal charges which an accused must eventually face. Bartlett v. United States, 354 F.2d 745, 74 (8th Cir.), cert. denied, 384 U.S. 945 (1966). Both are required to be clear, concise written statements, signed by the prosecuting attorney, which recite the essential facts constituting the charged offense. Fed. R. Crim. P. Rule 7(c)(1). However, "[a]n indictment is an action of the grand jury"[8] and is not subject to change by either the court or prosecution, except to correct formalistic errors.[9] C. Wright, Vol. 1 Federal Practice and Procedure, Criminal, § 127, at 415-16; see also Wylie, 919 F.2d at 973 ("[T]he government is proscribed by the sixth amendment from altering indictments on its own volition."). This prohibition against amendments is based on the idea that, if a grand jury is allowed to draft an indictment, it must also be the entity to change it. The rule is important to assure, where a right to a grand jury is guaranteed, "that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination." United States v. Beeler, 587 F.2d 340, 342 (6th Cir. 1978) ( citing United States v. Radetsky, 535 F.2d 556, 562 (10th Cir. 1976)).[10]
 
 
 19
 An information, by contrast, is drafted and signed by a representative of the district attorney. No independent entity considers the charges filed. "Since the prosecutor is free to make the charge, he should be equally free to change it, and the restrictive rules about amendment of indictment have no application to an information." C. Wright, Vol. 1 Federal Practice and Procedure, Criminal, § 128, at 430; Muncy v. United States, 289 F. 780, 781 (4th Cir. 1923) (unlike an indictment, an information may be amended); United States v. Manos, 340 F.2d 534, 536 (3d Cir. 1965) (government may amend information any time prior to verdict).
 
 
 20
 A criminal complaint is most similar to an information. It is drafted by the prosecuting attorney without any independent intervention, and like an information, does not offer the accused the protections afforded by the grand jury process. Because of this similarity, the rationale for freely allowing amendments to informations applies with equal force to criminal complaints. We conclude, where the rules pertaining to informations and indictments differ, e.g., Rule 7(e), a criminal complaint arising under Rule 58 shall be treated as an information. Therefore, Rule 7(e) will control the amendment of the government's complaint.
 
 IV.
 
 21
 Rule 7(e) permits amendments in the absence of prejudice or additional offenses. Neither has been demonstrated. The complaint in question accurately cited both applicable statutes and quoted the language of Va. Code Ann. 18.2-427. It also included a factual affidavit describing the alleged offense in detail. The affidavit indicated that the offense occurred at the Pentagon and Bianchi's residence. It specifically described several threatening telephone conversations which Wright initiated with personnel at the Pentagon. Wright was on notice from the filing of the complaint that the crimes for which he stood trial involved the telephone calls to the Pentagon, and he was adequately prepared to defend against those charges. At trial, counsel for Wright disclosed to the magistrate, "when we came to court today, I came prepared to defend an information charging jurisdiction in the Pentagon only in the special territorial maritime jurisdiction." The minor error in the complaint, thus, did not mislead Wright in any significant manner.
 
 
 22
 Further, the offense charged after the amendment remained substantially unchanged, and no new offenses were charged. The amendment merely corrected a technical flaw in the complaint without altering the facts or affecting Wright's substantive defenses. Therefore, the demands of Rule 7(e) are satisfied. It was not an abuse of discretion to grant the government's motion to amend.
 
 
 23
 The district court's decision is AFFIRMED.
 
 
 
 [1]
 During a phone conversation, Wright challenged Sergeant Major James Olsen, one of Bianchi's superiors, to a fight
 
 
 [2]
 This Court previously found an earlier version of this statute, Va. Code § 19.1-238, facially overbroad in Walker v. Dillard, 523 F.2d 3, 6 (4th Cir.), cert. denied, 423 U.S. 906 (1975). Amendments in 1975 and 1976 remedied the statutes unconstitutional characteristics
 
 
 [3]
 The Pentagon is within the special maritime and territorial jurisdiction of the United States as required by 18 U.S.C. § 13
 
 
 [4]
 Wright was sentenced to one year of supervised probation and required to avoid all contact with the individuals involved with this offense. He was also ordered to undergo mental health counseling
 
 
 [5]
 Fed. R. Crim. P. 58 was adopted by the Supreme Court on May 1, 1990 and became effective December 1, 1990. It abrogates the Rules of Procedure for the Trial of Misdemeanors before United States Magistrates
 
 
 [6]
 A violation of 18 U.S.C. § 13 is not categorized in its description. The punishment for a violation depends solely upon the crime assimilated by the federal statute. 18 U.S.C. § 13. A violation of Va. Code Ann. § 18.2-427, as a class 1 misdemeanor, carries with it a maximum jail sentence of "not more than twelve months and a fine of not more than $2,500, either or both." Va. Code Ann. § 18.2-11(a) (Michie Supp. 1992). Where a letter grade does not exist in the section defining the federal crime, it is classified by the maximum possible sentence for the crime. 18 U.S.C. § 3559(a)(6). A class A misdemeanor corresponds to a term of imprisonment for one year or less, but not more than six months. Id. Therefore, Wright's violation of 18 U.S.C § 13 is a class A misdemeanor
 
 
 [7]
 The requirements for the sufficiency of charging documents have been implicitly applied to criminal complaints. See United States v. Cash, No. 91540, 1992 U.S. Dist. LEXIS 1043, at n.2 (E.D. La . Jan. 25, 1992) (demands for sufficient indictment applied to determine complaint's sufficiency) ( citing United States v. Rivera, 879 F.2d 1247, 1251 n.3 (5th Cir.) (listing requirements for sufficient indictment), cert. denied, 493 U.S. 998 (1989)
 
 
 [8]
 The sole function of the grand jury is to determine whether there is probable cause to believe the alleged crime has been committed. United States v. Cox, 342 F.2d 167, 171 (5th Cir.), cert. denied, Cox v. Hauberg, 381 U.S. 935 (1965)
 
 
 [9]
 See Fed. R. Crim. P. 7(c)(3) (citation error is considered harmless, and indictment or information will not be dismissed unless defendant was mislead to his or her prejudice); Russell v. United States, 369 U.S. 749, 770 (1962) (may amend indictment if change is only a matter of form); Wilkins v. Maryland, 402 F. Supp. 76, 84 (D. Md. 1975) (allowed correction of typographical error in date of crime), aff'd without op., 538 F.2d 327 (4th Cir. 1976), cert. denied, 429 U.S. 1044 (1977)
 
 
 [10]
 'To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of the basic protection which the guaranty of the intervention of a grand jury was designed to prevent.' Russell v. United States, 369 U.S. 749, 770 (1962)