In re J. Richard CALDER, Debtor.

**J. Richard CALDER, Appellant,**

**v.**

**Reta JOB; Douglas Payne; John J. Borsos; Peter H. Waldo; Fabian & Clendenin; J. Dennis Frederick, Judge; Roger G. Segal, in his individual capacity and his official capacity as the original Chapter 7 trustee; Julie A. Bryan, in her individual capacity and her official capacity as attorney for the original Chapter 7 trustee; Stephen W. Rupp, in his individual capacity and his official capacity as the current Chapter 7 trustee; and Mona Lyman, in her individual capacity and her official capacity as attorney for the current Chapter 7 trustee, Appellees.**

**Nos. 91–4145, 91–4168.**

United States Court of Appeals,
Tenth Circuit.

Aug. 25, 1992.

J. Richard Calder, pro se.

Douglas B. Cannon of Fabian & Clendenin, Salt Lake City, Utah, for appellees Fabian & Clendenin and Douglas J. Payne.

R. Paul Van Dam, Utah Atty. Gen., and Brent A. Burnett, Asst. Atty. Gen., Salt Lake City, Utah, for appellee Judge J. Dennis Frederick.

Mona Lyman of McKay Burton & Thurman, Salt Lake City, Utah, for appellees Trustee Stephen W. Rupp and Mona Lyman.

John T. Morgan of Cohne, Rappaport & Segal, Salt Lake City, Utah, for appellees Trustee Roger G. Segal and Julie A. Bryan.

Before LOGAN and EBEL, Circuit Judges, and SAFFELS,* Senior District Judge.

LOGAN, Circuit Judge.

■ J. Richard Calder, an experienced bankruptcy attorney who has been disbarred, *see In re Calder*, 795 P.2d 656 (Utah 1990), appeals from an order of the district court resolving various motions and adversarial proceedings relating to his personal bankruptcy action.[1]

Calder makes essentially six arguments on appeal, as follows: (1) assets of the bankruptcy estate should be determined as of the date of Calder's original Chapter 7 filing, not the date of conversion to Chapter 13; (2) the effective date of the conversion to Chapter 13 should be the date Calder filed his motion to convert, not the date of the court's conversion order; (3) Calder is entitled to amend his claimed exemptions on his schedule B–4; (4) adversary proceedings against Frederick, Job, Fabian & Clendenin, Waldo, Borsos, Segal, Bryan,

---

* The Honorable Dale E. Saffels, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

1. Calder filed two notices of appeal from this order. No. 91–4145 was filed before the district court ruled on Calder's timely motion for a new trial and therefore is premature and of no effect. *See* Fed.R.App.P. 4(a)(4). Appeal No. 91–4145 is dismissed. Appellees' motions for an extension of time in which to file briefs in No. 91–4145 are denied as moot.

Lyman, and Rupp should not be dismissed; (5) Calder was not afforded due process in a hearing held May 3, 1991; and (6) sanctions against Calder were inappropriate.[2]

## I

Numerous adversarial actions were pending before the district court at the time Calder moved to withdraw reference of his motion to disqualify the bankruptcy court judges. The district court withdrew reference of the entire action, consolidated the pending proceedings, and resolved all issues against Calder. We will discuss the facts underlying this action only as needed to address Calder's arguments on appeal.

Calder filed a petition for relief under Chapter 7 on August 19, 1986. Because the bankruptcy court found that he made a false oath on certain documents in the case, Calder was denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A) in September 1988. *Job v. Calder (In re Calder)*, 93 B.R. 734, 735, 739 (Bankr.D.Utah 1988), *aff'd*, 907 F.2d 953 (10th Cir.1990). After the denial of discharge, on October 11, 1988, Calder filed a motion to convert to Chapter 13. About two weeks later, in an effort to collect on a state court judgment obtained earlier against Calder, Reta Job served a writ of garnishment on a garnishee holding funds allegedly belonging to Calder. The bankruptcy court denied Calder's motion to convert on November 18, 1988. *In re Calder*, 93 B.R. 739 (Bankr.D.Utah 1988), *rev'd, Calder v. Segal (In re Calder)*, Civ. No. C–89–59W (D.Utah Nov. 14, 1989). In September 1989, Job executed on the writ of garnishment and obtained approximately $15,000. Later, on November 14, 1989, the

district court reversed the bankruptcy court and held that Calder had a right to convert to Chapter 13. Shortly thereafter, apparently on December 12, 1989, the bankruptcy court entered an order[3] converting the case to Chapter 13. A few months later, in February 1990, Calder reconverted the case to Chapter 7.

## II

■ The first issue requires that we decide a question on which the courts are split, involving the interplay of several sections of the Bankruptcy Code. As he has done throughout these proceedings, Calder continues to assert that certain funds—which he alleges total approximately $60,-000—payable to him after the date he filed the original Chapter 7 petition are not property of the bankruptcy estate but instead are his own postpetition earnings. In his opening brief, he argues that the property of the current Chapter 7 bankruptcy estate should be determined as of August 19, 1986, the date of his original Chapter 7 petition. In his reply brief, however, Calder concedes that pursuant to 11 U.S.C. § 1306 the disputed $60,000 was included in his Chapter 13 bankruptcy estate. *See* Reply Brief to Brief of Rupp, Lyman, Segal, and Bryan at 16–17. This concession is consistent with our reading of the statute, which provides that the Chapter 13 estate includes property acquired or earnings from services performed "after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a). Thus, because the disputed funds were part of the Chapter 13 estate,[4] the only remaining issue as to them

---

**2.** After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.

**3.** The record apparently does not include this order. However, the date of December 12, 1989, is consistent with the briefs of the parties. *See* Brief of Respondents Fabian & Clendenin and Douglas J. Payne at 9; Brief of Appellant at 7. The statement by the district court that the

conversion became effective on November 14, 1989, *see* I R. doc. 67 at 6, appears mistaken. The district court apparently confused the date of the district court's reversal of the bankruptcy court's denial of conversion, which was dated November 14, 1989, with the bankruptcy court's subsequent conversion order.

**4.** The trustees and their counsel argue that *Calder v. Segal (In re Calder)*, 94 B.R. 200 (Bankr. D.Utah 1988), *aff'd, Calder v. Rupp (In re Calder)*, 912 F.2d 454 (10th Cir.1990), decided that the disputed funds were part of the bankruptcy estate, and thus the doctrines of res judicata and

is whether they became part of the current Chapter 7 estate when Calder reconverted from Chapter 13 to Chapter 7.

The courts of appeals addressing this issue have held that upon conversion from Chapter 13 to Chapter 7 all property of the Chapter 13 estate—including after-acquired property that is part of the Chapter 13 estate pursuant to § 1306(a)—is included in the Chapter 7 estate. *See In re Lybrook,* 951 F.2d 136, 138 (7th Cir.1991) (holding that "the Chapter 13 estate passes unaltered into Chapter 7 upon conversion"); *Armstrong v. Lindberg (In re Lindberg),* 735 F.2d 1087, 1090 (8th Cir.) (stating that "[t]he bankruptcy courts are in general agreement that in a case converted from chapter 13 to chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of conversion"), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984); *Winchester v. Watson (In re Winchester),* 46 B.R. 492, 495 (Bankr. 9th Cir.1984) (stating that "logic dictates that the date of conversion [from Chapter 13 to Chapter 7] is the controlling date on which to determine ... property of the Chapter 7 estate"). *But cf. Bobroff v. Continental Bank (In re Bobroff),* 766 F.2d 797, 803 (3d Cir.1985) (suggesting in dicta that after-acquired property should not be part of the postconversion Chapter 7 estate).

The bankruptcy courts, however, are split on this issue. Some agree with *Lybrook, Lindberg,* and *Winchester. See, e.g., In re Marcus,* 128 B.R. 294, 296 (Bankr.D.Colo.1991), *aff'd, In re Marcus,* 140 B.R. 803 (Bankr.D.Colo.1992); *In re Schmeltz,* 114 B.R. 607, 610 (Bankr. N.D.Ind.1990); *In re Tworek,* 107 B.R. 666, 667 (Bankr.D.Neb.1989); *In re Wanderlich,* 36 B.R. 710, 715 (Bankr.W.D.N.Y.

1984). Others have reached the opposite conclusion. *See, e.g., In re Horton,* 130 B.R. 326, 328 (Bankr.D.Colo.1991); *In re Gorski,* 85 B.R. 155, 156–57 (Bankr. M.D.Fla.1988); *Blood v. Wineburg (In re Marshall),* 79 B.R. 147, 150 (Bankr. N.D.N.Y.1987); *In re Lepper,* 58 B.R. 896, 898 (Bankr.D.Md.1986); *see also Lepper,* 58 B.R. at 899 & n. 3 (finding an even split in authority and stating that the courts are no longer, as stated in *Lindberg,* in "general agreement" on the issue); 5 *Collier on Bankruptcy* ¶ 1307.01[8] (Lawrence P. King ed., 15th ed. 1992) (stating that "most courts" have decided that property acquired after the Chapter 13 filing and before conversion to Chapter 7 does *not* become part of the Chapter 7 estate).

This issue requires an analysis of the interplay between 11 U.S.C. §§ 541, 1306, and 348. As stated by the bankruptcy court in *Lybrook:*

> Section 541 provides that the bankruptcy estate is created upon the commencement of a case. It then identifies what becomes property of the estate and what is excluded from it. Section 1306 expands the Chapter 13 estate beyond its composition as described by § 541. It includes not only the property that would otherwise become property of the estate under § 541 but also essentially all property the debtor acquires after the commencement of the case, until it is closed, dismissed or converted. In describing the effects of conversion, § 348 does not directly address the composition of the bankruptcy estate. It states only that, with certain exceptions, conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a).

---

collateral estoppel bar Calder from relitigating this issue. The bankruptcy court opinion is somewhat ambiguous, but we read it as deciding the legal issue that whatever funds were earned from prepetition services are part of the bankruptcy estate. We note that the bankruptcy court opinion expressly stated that an accounting was required "to distinguish between services which were performed pre-petition and those performed post-petition." 94 B.R. at 203. The trustee appears to have agreed that such an

accounting was necessary, *see, e.g.,* II R. doc. 38, ex. Q at 8–9 (transcript of October 11, 1989 hearing before district court), and the record suggests that some attempt was made to separate the funds in question into prepetition and postpetition amounts. In any event, Calder's concession that the disputed funds were part of the Chapter 13 estate makes an accounting unnecessary and we need not decide the extent to which the prior court rulings preclude relitigating this issue.

*Robb v. Lybrook (In re Lybrook)*, 107 B.R. 611, 612 (Bankr.N.D.Ind.1989), *aff'd, Lybrook v. Robb*, 135 B.R. 321 (N.D.Ind.1990), *aff'd, In re Lybrook*, 951 F.2d 136 (7th Cir.1991).

We agree with the *Lybrook* court's analysis that "[a] proper reading of § 348 indicates that it is not a source of disruption but, instead, preserves the continuity of the bankruptcy proceedings." 107 B.R. at 613. Furthermore, we agree that

[w]hen § 348 is viewed as a source of continuity, the plain language of § 541 easily becomes susceptible to the conclusion that the bankruptcy estate, following conversion from Chapter 13 to Chapter 7, is the Chapter 13 bankruptcy estate. The estate was created upon the commencement of the case. 11 U.S.C. § 541(a). At the moment of creation, it essentially consisted of all of the property in which debtor had an interest. 11 U.S.C. § 541(a)(1). The estate does not, however, remain static. It also includes "any interest in property that the *estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added).

Through § 1306, the estate acquires an interest in the property debtor acquires between the date of the petition and the date of conversion. By its terms, § 541(a)(7) is broad enough to include this post-petition property in the Chapter 7 bankruptcy estate, following conversion from Chapter 13. It is able to do so through a simple reading of its plain language, without resorting to strained or contorted interpretations of the consequences of conversion. Instead, it is merely a recognition that § 348 "does not purport to alter or modify the provisions or applicability of sections 541 and

1306." *In re Wanderlich, supra,* 36 B.R. at 714.

*Id.* We also agree with the conclusion of the bankruptcy judge, *see id.* at 614, and Judge Posner, who wrote on appeal for the Seventh Circuit, that "a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors," 951 F.2d at 137.

In reaching the opposite conclusion, some courts have relied on the fact that § 103(h) makes § 1306 applicable only in Chapter 13. *See, e.g., Lepper,* 58 B.R. at 898. These courts reason that upon conversion, with § 1306 inapplicable, property of the estate is defined solely by § 541. *See, e.g., id.* The flaw in this reasoning is that it ignores the effect of § 541(a)(7). During the pendency of the case in Chapter 13— when § 1306 applies—§ 1306 includes in "[p]roperty of the estate" after-acquired property and postpetition earnings from services performed by the debtor. 11 U.S.C. § 1306(a). Upon conversion to Chapter 7, § 541(a)(7) includes in the Chapter 7 estate "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7). Reading these two provisions together, we hold that all property in plaintiff's Chapter 13 estate—including any funds included pursuant to § 1306—are part of the postconversion Chapter 7 estate.[5]

### III

■ Calder also argues that the date he filed his motion to convert—October 11, 1988—should be the effective date of his conversion, not the date of the bankruptcy court's order granting the motion, which was December 12, 1989. After Calder had been denied a discharge and after he filed

---

5. Our decision regarding the composition of a Chapter 7 estate upon conversion from Chapter 13 is not inconsistent with this court's recent decision in *Patrick A. Casey, P.A. v. Hochman,* 963 F.2d 1347 (10th Cir.1992). In *Hochman,* this court held that when a *Chapter 11* case is converted to Chapter 7, the date of filing the original Chapter 11 petition determines what property constitutes the Chapter 7 estate. *Id.* at 1350. Thus, property acquired *after* the filing of a Chapter 11 petition—which is *not* part of the

Chapter 11 estate—continues *not* to be part of the bankruptcy estate upon conversion to Chapter 7. We agree with the Fifth Circuit that a conversion from Chapter 13 to Chapter 7 is distinguishable from a conversion from Chapter 11 to Chapter 7. *See Stinson v. Williamson (In re Williamson),* 804 F.2d 1355, 1359–62 (5th Cir.1986). The most important distinguishing factor is that in Chapter 11 there is no provision akin to § 1306(a). *See Williamson,* 804 F.2d at 1360.

the motion to convert to Chapter 13, but before the court order granting the conversion, Job executed on a valid state court judgment. Calder argues that he had an absolute right to convert pursuant to § 706(a)[6] and that the Chapter 13 automatic stay was imposed on the date of his motion. Therefore, he asserts, Job could not execute on her judgment.

Bankruptcy Rules 1017(d) and 9013 are relevant to when a conversion from Chapter 7 to Chapter 13 becomes effective. Rule 1017(d) provides that conversion pursuant to § 706(a) "shall be on motion filed and served as required by Rule 9013." Rule 9013 provides inter alia that *"[a] request for an order ... shall be by written motion."* (emphasis added). These provisions indicate that a *motion* to convert pursuant to § 706(a) is not effective in and of itself, but rather is a request for a court *order* of conversion. This conclusion is bolstered by Rule 1017(d)'s different treatment of conversions from Chapters 12 or 13, which "shall be converted *without court order* on the filing by the debtor of a notice of conversion." Bankr. Rule 1017(d) (emphasis added). "The rule makers certainly intended that conversion of a chapter 7 case be accomplished by the entry of an order, not the mere service of notice of intent to request such an order." *In re Dipalma*, 94 B.R. 546, 549 (Bankr.N.D.Ill. 1988).

We agree with Calder's statement that the Bankruptcy Rules cannot override the absolute statutory right to convert pursuant to § 706(a). However, the Rules do not purport to overrule the right to convert; rather, they simply lay out the procedures to be followed to implement a conversion. We perceive no conflict between § 706(a) and Rules 1017(d) and 9013.

For the foregoing reasons, we hold that a conversion from Chapter 7 to Chapter 13 pursuant to § 706(a) becomes effective only upon the entry of a conversion order by the court. Thus, the effective date of plaintiff's conversion from Chapter 7 to Chapter 13 was December 12, 1989. Because the conversion to Chapter 13 had not yet become effective at the time Job executed on her judgment, there was no Chapter 13 stay in effect. At the time of the execution the Chapter 7 automatic stay had been lifted because of the denial of discharge, *see* 11 U.S.C. § 362(c)(2)(C); *Watson v. City Nat'l Bank (In re Watson)*, 78 B.R. 267, 270 (Bankr.C.D.Cal. 1987), and Calder had not requested a continuation of the Chapter 7 stay. Absent a stay, there was no bar to Job's execution.

## IV

Calder argues that he is entitled to claim additional exemptions listed in his proposed amendment to his B-4 schedule. Generally, schedules in a bankruptcy case "may be amended by the debtor as a matter of course at any time before the case is closed." Bankr. Rule 1009(a); *see also, e.g., Redmond v. Tuttle*, 698 F.2d 414, 416 (10th Cir.1983) (addressing similar predecessor rule);[7] *In re Blaise*, 116 B.R. 398, 400 (Bankr.D.Vt.1990). An amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors. *See Stinson v. Williamson (In re Williamson)*, 804 F.2d 1355, 1358 (5th Cir. 1986); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir.1982).

Calder apparently attempted to amend his exemptions in February 1991, more than four years after filing his original Chapter 7 petition and more than one year after the order converting the case to Chapter 13. The district court denied the amendment as untimely. The court did not expressly state that it found bad faith or prejudice to creditors. We construe the

---

6. The district court decided that Calder had the right to convert his original Chapter 7 case to Chapter 13 when it reversed the bankruptcy court's order denying conversion. Thus, at this point it is undisputed that Calder had the right to convert.

7. The district court quoted language from *Redmond* that an amendment to claim an exemption in *newly-found property* should be allowed as a matter of course. That was the precise issue in *Redmond*. But there is no suggestion in *Redmond* that amendments for other reasons are governed by a different standard.

district court's order, however, as a finding of bad faith and/or prejudice to creditors.

At the May 3, 1991 hearing the trustee expressly argued that the amendment was made in bad faith. The trustee also argued at the hearing and on appeal that the trustees have been engaged in extensive litigation regarding the funds in which Calder now seeks to claim an exemption. We construe the latter argument as an assertion of prejudice to creditors. *See Williamson,* 804 F.2d at 1358 (stating that prejudice involves "harm to the creditor's litigating posture because of some detrimental reliance on the debtor's initial position").

■ Under the circumstances of this case, particularly the fact that the debtor was an experienced bankruptcy attorney, there is a sufficient showing of bad faith and/or prejudice to creditors to support the denial of the amendment. Although Calder asserts that he could not have claimed any exemption in the disputed funds at the same time he was taking a position that none of the funds were property of the estate, he must bear some responsibility for not making his alternative position clearer. If Calder had timely amended his schedule of exemptions this would have affected the ongoing litigation.

Furthermore, on the date of the motion to convert to Chapter 13, or at least by the date of the conversion order, Calder knew or should have known that the disputed funds were then property of the Chapter 13 estate and would be subject to any available exemptions. Nevertheless, he delayed offering the amendment for over two years after the motion to convert and approximately thirteen months after the conversion order. During these time periods the trustee on behalf of creditors was litigating inter alia the question whether the funds were property of the estate and was relying on Calder's stated position that the funds were not property of the estate at all. Thus, we conclude that the district

court did not abuse its discretion in denying the amendment.[8]

## V

Next, Calder argues that adversarial proceedings against appellees should not have been dismissed. Calder brought various charges relating to each of these parties' contact with the disputed funds. These allegations are without merit. We affirm the district court's judgment for substantially the reasons given by that court.

## VI

■ Calder argues he was not afforded due process at a hearing held May 3, 1991, because he was not permitted to present witnesses and was limited in the time he was permitted to argue. The district court limited each party to five minutes per issue. The court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Calder was permitted to file briefs in which he explained his position on the issues considered at the hearing. The hearing was necessary only to clarify issues, not to present the entire substance of each argument. We have reviewed the entire transcript of the May 3, 1991 hearing, and find no indication that Calder even asked to present witnesses. Even if he did make such a request, he has not explained what information not already in the record would have been provided by his witnesses. Thus, the court did not deny Calder due process in its management of the hearing.

## VII

■ The district court imposed sanctions enjoining Calder from litigating issues relating to those decided in its order. Calder argues that the district court erred in stating that he had attempted to frus-

---

8. Because of our disposition we need not reach the separate question, *see Redmond,* 698 F.2d at 417, whether the claimed exemption should be allowed on the merits. Thus, we need not reach the trustee's arguments that: (1) neither Utah

Rule of Civil Procedure 64D nor Utah Code Ann. § 70C–7–103 provide Calder an exemption; and (2) the disputed funds are not listed as wages on his schedule of assets.

trate creditors and the trustees' efforts to close the estate. His brief also includes a one-sentence heading, but no argument or authorities, asserting that the issue of sanctions should be determined on the basis of the record. The district court may enjoin a party to prevent the misuse of litigation. *Span–Eng Assocs. v. Weidner,* 771 F.2d 464, 470 (10th Cir.1985). Our review of the record supports the district court's action. We review an award of sanctions for abuse of discretion, *see Dodd Ins. Servs., Inc. v. Royal Ins. Co.,* 935 F.2d 1152, 1155 (10th Cir.1991), and we find none in the instant case.

AFFIRMED.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

