**In re Mark James GROGAN and Jan Grogan, Debtors.**

**No. 02–36231.**

United States Bankruptcy Court, D. Utah, Northern Division.

Oct. 24, 2003.

Jory Trease, Johnson and Trease, Salt Lake City, Utah, for Mark James and Jan Grogan.

David L. Miller, Chapter 7 Trustee, Layton, Utah, for Trustee.

## MEMORANDUM DECISION

JUDITH A. BOULDEN, Bankruptcy Judge.

The debtor deposited the proceeds from a personal injury settlement into her bank account shortly before filing, but she failed to disclose either the settlement proceeds or the bank account on her statements and schedules filed seven days later. The Chapter 7 trustee subsequently discovered the undisclosed assets and sought turnover of the settlement proceeds to the estate.

After months of delay, the debtors finally amended their schedules by first listing the settlement proceeds as an asset and then amending to claim the funds as exempt property. The trustee objected to the amended exemption, asserting, among other grounds, that the debtors had intentionally omitted the asset from their schedules and that such conduct precludes allowance of the amended exemption. After careful review of the evidence presented, including the credibility of proffered testimony, the arguments of counsel, and having made an independent review of applicable case law, the Court sustains the trustee's objection to the amended exemption and grants the motion for turnover.

## FACTS

James and Jan Grogan (the "Debtors") filed their Chapter 7 voluntary petition (Petition) along with their Statement of Financial Affairs and Schedules (Original Schedules) on September 26, 2002. Two years prior to filing for bankruptcy, Jan Grogan was injured in an automobile accident in which she suffered whiplash injuries. She subsequently became involved in a personal injury action that settled sometime prior to the filing of this bankruptcy. The Original Schedules made no mention of a personal injury suit nor of the existence of any recovery (Settlement Proceeds) related to such a suit. The Debtors also failed to list a personal checking account in Jan Grogan's name at Frontier State Bank (Frontier Account). The evidence is inconclusive as to whether the Debtors disclosed the Settlement Proceeds and Frontier Account at the § 341 meeting of creditors held on November 14, 2002, but it is clear that they failed to disclose

the Settlement Proceeds and Frontier Account in amended schedules they filed a week later.

In April 2003, the Chapter 7 Trustee (Trustee) requested certain bank statements from the Debtors in an attempt to collect the Debtors' tax refunds. Upon receipt of the Debtors' bank statements, the Trustee discovered the Settlement Proceeds in the undisclosed Frontier Account and directed the Debtors to turnover the funds to the estate. After the Debtors failed to comply with the Trustee's directives, the Trustee requested the aide of the Court in compelling the Debtors to relinquish the Settlement Proceeds. An order was entered July 8, 2003 ordering the Debtors to show cause why they should not be required to turnover the bank account funds.

In indirect response to the order to show cause, the Debtors amended their schedules on July 23, 2003 (Second Amended Schedules). Nearly four months after the Trustee discovered the funds and ten months after filing, the Debtors finally listed the Settlement Proceeds of $4,000 on Schedule B, ¶ 33, as personal property of Jan Grogan and claimed an exemption of $4,000 on Schedule C under Utah Code § 78-23-5(a)(ix). Even with this second amendment, the schedules remain incomplete. To date, the Debtors have yet to disclose Jan Grogan's Frontier Account on Schedule C, ¶ 2. The Trustee timely filed an Objection to Exemption and Motion for Turnover (Motion) objecting to exemption [1] and seeking turnover of the funds that existed in the Frontier Account at filing.

---

**1.** The Debtors filed their exemption claim on July 23, 2003 and the Trustee filed his objection less than thirty days later on August 18, 2003. *See* Fed. R. Bankr. P. 4003(b). *See also Taylor v. Freeland & Kronz*, 503 U.S. 638, 643,

112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (finding objections to exemptions made outside the 30 days provided in Fed. R. Bank. Proc. 4003(b) will be disallowed).

At the hearing on the Trustee's Motion, the Debtors' attorney presented evidence by proffer.[2] The proffered testimony indicated that Jan Grogan was ultimately paid two different checks for the Settlement Proceeds, one for $3,508.41 and one of "just over $300."[3] Less than a week prior to filing on September 20, 2002, Jan Grogan deposited the Settlement Proceeds of $3,787.33[4] in the Frontier Account which, with the exception of a $921.13 paycheck deposited three days earlier, previously had a zero balance. The Debtors did not present any explanation or reasoning behind their decision not to disclose the Settlement Proceeds. The Debtors' attorney was unable to explain the current status of the Settlement Proceeds because James Grogan, the only Debtor present at the hearing, claims Jan Grogan "maintains all of the financial accounts" but he believes the funds have been dissipated "based on the advice of their prior counsel."[5]

The Trustee's Motion asks the Court to disallow the Debtors' exemption claim under a statutory interpretation theory,[6] but the Court finds it unnecessary to determine the validity of the Trustee's statutory arguments in that the exemption should be disallowed on the alternative grounds asserted. Specifically, the Debtors are not entitled to a claim of exemption on an asset which they knowingly concealed and failed to disclose on their Original Schedules and then later attempt to claim as exempt.

## DISCUSSION

The Federal Rules of Bankruptcy Procedure allow a debtor to amend schedules or statements at any time before the case is closed.[7] Allowing unlimited amendments promotes and encourages "accurate and reliable [schedules and statements] without the necessity of digging out and conducting independent examinations to get the facts."[8] Of course, as one court has stated "I do not regard any omission from statements of financial affairs or schedules to be trivial where it has any bearing on the existence or disposition of potential estate assets."[9] For this reason, there are certain exceptions to the rule allowing unlimited amendments. The controlling case law in the Tenth Circuit provides that an amendment that claims an exemption may be denied upon a clear and convincing showing of bad faith by the debtor or prejudice to creditors.[10]

---

**2.** It should be noted that the testimony proffered by counsel was that of James Grogan, the only debtor to appear at the hearing. Although both the assets involved and the exemption claimed belong to Jan Grogan, she did not appear because she was out of state at the time of the hearing.

**3.** Record at 6, *In re Grogan* (No. 02–36231).

**4.** Debtors' attorney indicates the discrepancy in the amount deposited and the amount presented as being paid to Jan Grogan is due to a cash withdrawal made contemporaneously with the deposit in the amount of approximately $50.

**5.** Record at 18, *In re Grogan* (No. 02–36231).

**6.** The argument asserts that the commingling of funds with other non-exempt assets pre-

vents a claim of exemption under a complex statutory interpretation of Utah Code Ann. § 78–23–9 read in conjunction with Utah Code Ann. § 78–23–5(1)(a)(ix).

**7.** *See* Fed. R. Bankr. P. 1009(a).

**8.** *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974)).

**9.** *Id.* at 597 (quoting the district court opinion).

**10.** *See Calder v. Job (In re Calder)*, 973 F.2d 862, 867 (10th Cir.1992) (even though schedules may be amended as a matter of course, an amendment may be denied if there is bad faith by the debtor or prejudice to creditors). *See also In re Yonikus*, 996 F.2d 866, 872 (7th

In *Calder*, a debtor disputed that funds were property of the estate and did not claim them as exempt.[11] Once the Chapter 7 trustee established the funds were property of the estate, the debtor attempted to amend to claim the funds exempt, and the court disallowed the amendment as having been filed in bad faith and as being prejudicial to creditors.[12] The Tenth Circuit is not alone in precluding amendments if they are filed in bad faith or prejudice creditors:

> Exceptional circumstances may prevent a debtor from amending schedules. Amendment may be denied upon a showing of bad faith or prejudice to creditors or third parties. A mere allegation by an objector of bad faith or prejudice is insufficient. Bad faith and/or prejudice must be shown by clear and convincing evidence.[13]

If bad faith and prejudice to creditors may be found in circumstances where a debtor disputes that an asset is property of the estate and thus fails to claim an exemption, the intentional concealment of an asset raises heightened concerns regarding good faith. Courts in other jurisdictions have consistently held that intentional concealment of assets bars the debtor's exemption claim after the assets are uncovered.[14] The Seventh Circuit illustrates the reasoning behind the standard in a case where the debtors filed a list of personal property on their statements and schedules that conflicted with a list of personal property they filed with their insurance company five months later:

> [A]lthough amendments before discharge are liberally allowed it is most unlikely that the [debtors] would be permitted to amend. The [debtors'] omissions from the initial list suggest that they meant to hide assets if they could get away with it .... The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.... When it is hard to detect an effort to evade the law, the penalty must exceed the profits of the evasion. So, here, it is too late for [the debtors] to start over and ask the court to apportion the proceeds as if they had filed a complete schedule in the first instance.[15]

An attempt to take advantage of the fresh start offered by bankruptcy by concealing assets is not tolerated and amounts to

---

Cir.1993); *In re St. Angelo*, 189 B.R. 24, 26 (Bankr.D.R.I.1995).

11. *Calder*, 973 F.2d at 868.

12. *Id.*

13. *Kobaly v. Slone (In re Kobaly)*, 142 B.R. 743, 748 (Bankr.W.D.Pa.1992) (internal citations omitted).

14. *See e.g., Yonikus*, 996 F.2d at 868 ("fraudulent concealment of an asset works as a forfeiture of exemption rights"); *Doan v. Hudgins (In re Doan)*, 672 F.2d 831, 833 (11th Cir. 1982) (holding "concealment of an asset will bar exemption of that asset"); *In re Miller*, 255 B.R. 221, 222 (Bankr.D.Neb.2000) (concluding "a debtor may not claim as exempt property intentionally omitted from schedules"); *In re Park*, 246 B.R. 837, 840 (Bankr. E.D.Tex.2000) ("A debtor may not claim as exempt property which he knowingly concealed and failed to disclose to trustee which normally would be exempt had it been properly scheduled and claimed."); *St. Angelo*, 189 B.R. at 26 ("Intentional concealment of estate property will bar the debtor from claiming such property as exempt, after it surfaces as an asset.").

15. *Payne v. Wood*, 775 F.2d 202, 205 (7th Cir.1985), *cert. denied* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986) (internal citations omitted).

fraud.[16] An attempt to exempt assets once hidden by the debtor and later fortuitously discovered by the trustee will likewise not be tolerated.

■■■ The debtor's intent to conceal is a question of fact, or of inference to be drawn from the facts, to be determined by the bankruptcy court.[17] Should a debtor assert that the failure to properly disclose an asset was an inadvertent mistake, such "failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment."[18]

In this case there is ample evidence on the record to infer an intent to conceal the Settlement Proceeds. On a Friday, the Debtors received and deposited the Settlement Proceeds into an undisclosed bank account that had a zero balance only days before, the following Thursday they filed the Petition. It is inconceivable that a couple under such extreme financial pressure would simply forget an increase to their economic state of nearly $4,000. The close timing of the receipt of the Settlement Proceeds and the filing of the Petition alone creates an inference of intent to conceal the asset. But the Court does not have to rely on this inference alone in making its determination.

The Debtors also failed to disclose the existence of Jan Grogan's Frontier Account in which the Settlement Proceeds were deposited. The Debtors concealed the account by omitting it from the Original Schedules and the two subsequent amendments, and by apparently failing to disclose its existence at the § 341 meeting. Other than one page of what appears to be an incomplete bank statement submitted as evidence at the hearing, parties in interest still have not been formally noticed of the Frontier Account. This point was never addressed by the Debtors' counsel nor by the Trustee at the hearing but the Court finds such non-disclosure a continuing concealment of property of the estate.

■■■ The timing of the Debtors' eventual disclosure of the Settlement Proceeds is also suspect. "Late amendments to false schedules will not salvage an errant debtor's rights under the Bankruptcy Code."[19] The Trustee discovered the funds while attempting to recover tax refunds from the Debtors. Even after the inadvertent discovery and several demands by the Trustee, the Debtors refused to turnover the Settlement Proceeds. It was not until the Court issued an order to show cause that the Debtors were spurred into action and filed the Second Amended Schedules finally listing the asset and claiming an exemption to the previously concealed assets.

The facts of this case are similar to those in *Yonikus* where the debtor was also involved in a personal injury suit which he attempted to conceal by hiring different lawyers to represent him in each matter and by not scheduling the claim as an asset of the estate or as exempt property.[20] The debtor similarly did not inform

---

16. Criminal sanctions can result from a debtor's concealment of property belonging to the estate. *See* 18 U.S.C. § 152. *See e.g., United States v. Grant,* 971 F.2d 799 (1st Cir.1992); *United States v. Beard,* 913 F.2d 193 (5th Cir.1990); *United States v. Jackson,* 836 F.2d 324 (7th Cir.1987); *United States v. Cherek,* 734 F.2d 1248 (7th Cir.1984).

17. *See Yonikus,* 996 F.2d at 872. *See also St. Angelo,* 189 B.R. at 26.

18. *Mims v. Browning Manufacturing (In re Coastal Plains),* 179 F.3d 197, 210 (5th Cir. 1999).

19. *Park,* 246 B.R. at 844.

20. *Yonikus,* 996 F.2d at 873.

the trustee of the settlement money he received from his personal injury suit. The Seventh Circuit's reaction to the debtor's conduct can also be said about the Grogan's behavior: "The Debtor's conduct shows that if the Trustee had not discovered the personal injury action, the Debtor would never have reported it to the Bankruptcy Court." [21] Likewise, a Rhode Island bankruptcy court found it "painfully obvious that, except for the Trustee's unexpected receipt of settlement proceeds, [the debtor] would never have disclosed the existence of this asset to the Court or his creditors." [22] But for the unexpected discovery by the Trustee of the Settlement Proceeds in the account statements, the Debtors would have continued to conceal the asset to the detriment of their creditors.

The final piece of evidence that points toward an intent to conceal is the presumption that the Debtors have spent the money. The initial concealment of the assets, the deliberate delay in amending the schedules and the depletion of the funds clearly and convincingly demonstrates that the Second Amended Schedules were made in bad faith.

The Debtors' conduct is also prejudicial to creditors. The Trustee was required to expend resources of the estate not only to ferret out the asset, but to obtain and prosecute the Order to Show Cause to compel the Debtors to finally disclose and turnover the Settlement Proceeds. The untimely amendments have delayed administration of the estate and distribution to creditors.[23] Even now, it appears that the Debtors may have dissipated the property of the estate to the detriment of creditors. The Debtors' "blatant dishonesty in preparing [their] schedules from which may be inferred an attempt to hinder the Trustee's administration of assets of the estate" [24] results in prejudice to the creditors.

## CONCLUSION

The Court has reviewed the Debtors' various schedules and heard their wholly inadequate explanations as to why the Court should allow their exemption,[25] and concludes that the Debtors have acted in bad faith in claiming the exemption on assets now disclosed in their amended schedules. The Debtors concealment of assets also results in prejudice to their creditors. Although amendments to schedules to claim an exemption may be disallowed for either bad faith or prejudice to creditors, the egregious facts of the instant case result in clear and convincing evidence of *both* bad faith and prejudice to creditors of the estate. The relief sought in the Motion should be granted, the exemption claimed in the Second Amended Schedule disallowed and the Debtors required to turnover the Settlement Proceeds to the Trustee for distribution to the estate. A separate order under Fed. R. Bankr.P. 9021 shall issue.

---

21. *Id.*

22. *St. Angelo,* 189 B.R. at 27–28.

23. *Calder,* 973 F.2d at 868 (the debtor's delay in asserting his exemption while the trustee litigated over the ownership of the assets was prejudicial to creditors).

24. *Park,* 246 B.R. at 840–41.

25. As in *Calder,* the Court finds it unnecessary to address the parties arguments under UTAH CODE ANN. § 78–23–5(1)(a)(ix). *See Calder,* 973 F.2d at 868 n. 8.