**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re:

RICHARD A. FORD and TONDA L.
FORD, also known as Tonda Yung,

        Debtors.
_____

DUANE H. GILLMAN, Trustee,

        Appellant,

    v.

RICHARD A. FORD AND TONDA L.
FORD, individuals,

        Appellees.

No. 06-4029

**APPEAL FROM THE TENTH CIRCUIT**
**BANKRUPTCY APPELLATE PANEL**
**(BAP NO. UT-05-036)**

Duane H. Gillman (Steven J. McCardell and Michael F. Thomson with him on the
briefs) Durham Jones & Pinegar, Salt Lake City, Utah for Appellant.

Thomas D. Neeleman (Jennifer L. Neeleman with him on the brief) Thomas D.
Neeleman, Esq., L.C., Salt Lake City, Utah, for Appellee.

Before **HENRY**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

The question presented in this appeal is whether Tonda Ford, a debtor in Chapter 7 bankruptcy, is entitled to keep a personal injury settlement arising from a claim she failed to disclose in her bankruptcy proceedings. The bankruptcy court concluded that Ford acted in bad faith in delaying disclosure of her interest in the personal injury suit, and thus denied an exemption that ordinarily applies to personal injury settlements under Utah law. Ford appealed to the Tenth Circuit Bankruptcy Appellate Panel, which reversed.

Two issues are raised by the parties on appeal. One, what is the proper burden of proof in assessing whether a debtor has concealed assets in bad faith; and, two, was the bankruptcy court's finding of bad faith clearly erroneous on this record? We conclude that the applicable burden of proof is the preponderance of the evidence standard and that sufficient evidence supported the bankruptcy court's finding of bad faith.

Taking jurisdiction pursuant to 28 U.S.C. § 158 (d), we therefore AFFIRM the bankruptcy court's denial of Ford's exemption.

## I. Background

*A. Factual Background*

Tonda Ford was seriously injured in a car accident in December 2003. As a result of the accident, Ford was treated for extensive head injuries which caused her to miss work as a paralegal and required followup therapy. Shortly after the

accident, Ford retained a law firm to represent her in bringing a claim against the driver of the other vehicle. The firm filed a complaint on Ford's behalf in February 2004 seeking general damages for pain and suffering, past and future medical expenses, lost earnings, loss of earning capacity, and loss of property.

Encountering financial difficulties after the accident, Ford and her husband filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in May 2004. For her bankruptcy matter, Ford retained different lawyers from a different firm than those working on her accident case. At that time, she was working as a project assistant for a law firm specializing in medical malpractice.

Along with her petition for bankruptcy, Ford and her husband completed schedules listing their assets and debts. On the schedule requiring the Fords to disclose all of their assets—including legal claims they might have against others—Ford did not disclose her damages claim in the pending accident case.[1] During the pendency of her bankruptcy case, moreover, Ford never informed her bankruptcy counsel of the accident litigation. The bankruptcy case was closed in August 2004, when the Trustee filed a no-asset report.[2] The personal injury suit was still pending at this time.

---

[1] Under the Bankruptcy Code, any claim with potential value must be disclosed in a bankruptcy proceeding, even if contingent. 11 U.S.C. § 521(a)(1).

[2] In "no-asset" cases the debtor has no property available to satisfy unsecured claims. 1-1 Collier on Bankruptcy, ¶ 1.03 (15th ed. rev. 2006).

Ford says she did not become aware of her obligation to disclose the personal injury suit until shortly after her bankruptcy case closed. According to Ford, she was meeting at the office of her personal injury lawyer in late August when a paralegal asked if she had filed for bankruptcy. When Ford answered in the affirmative, the paralegal asked if she had listed the accident claim in her schedules. Ford said no, and the paralegal notified her of her duty to do so. Ford claims that she immediately called her bankruptcy attorney to disclose her interest in the suit. Aplt. App. 132–133. Nevertheless, the record reflects that Ford did not move to reopen her bankruptcy case until October 2004, Aplt. App. at 116, and did not file amended schedules until December 2004. Aplt. App. at 7–12.

In September 2004, Ford's personal injury suit settled for $50,000. At this time, Ford moved to reopen the bankruptcy proceedings in order to list her interest in the civil suit. After the bankruptcy court agreed to reopen the case on December 2, 2004, Ford filed amended schedules listing the settlement and seeking an exemption for the proceeds under Utah Code Ann. § 78-23-5.[3] The

---

[3] Under Utah law, personal injury awards—though part of the bankruptcy estate—are exempt from attachment by creditors:

78-23-5. Property Exempt from Execution
(1)(a) An individual is entitled to exemption of the following property:
* * *
(x) proceeds of insurance, a judgment, or a settlement, or other rights accruing as a result of bodily injury of the individual or of the wrongful death or bodily injury of another individual of whom the individual was or is a dependent to the extent that those proceeds are compensatory.

(continued...)

-4-

bankruptcy Trustee objected to the exemption, however, claiming that Ford had intentionally concealed her interest in the suit in bad faith and had disclosed it only after learning she could not access the settlement proceeds otherwise.

B.  *The Bankruptcy Court Proceedings*

The bankruptcy court held an evidentiary hearing on the Trustee's objection to the exemption claim.  Ford was the only witness to testify.  After considering the admitted evidence, hearing Ford's testimony, and assessing her credibility, the court concluded that Ford intentionally concealed the personal injury claim in order to benefit herself and prejudice creditors.

At the hearing, Ford maintained her initial failure to disclose was based on her innocent misapprehension of the law and that she moved to disclose as soon as she became aware of her obligation to do so.  She provided two explanations for her failure to disclose.  *First*, she explained that based on her paralegal training she intentionally failed to disclose the claim because she believed personal injury awards were exempt from creditors under state law.[4]  *Second*, she

---

[3](...continued)
Utah Code Ann. § 78-23-5 (2005).  While settlement funds for personal injuries are exempt under Utah law, the debtor's potential interest nevertheless must be disclosed so that the bankruptcy trustee may conduct a proper accounting.

[4]  Ford's belief was wrong.  Under both state and federal rules, Ford was required to disclose the settlement as an asset of her estate—contingent or otherwise—and then seek an exemption.  These rules allow the trustee to investigate whether the claimed exemption is valid and ensure the debtor's estate is complete.  *See*, *e.g.*, *In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio
(continued...)

claimed that she failed to schedule the suit because she thought she was only required to list claims brought against *her*, and not claims she was asserting against *others*.

In a terse ruling from the bench, the bankruptcy court made the following findings: (1) Ford had "knowledge of the undisclosed claim, and had a motive for its concealment;" (2) "because of her paralegal training [Ford] knew that [the claim] was exempt and therefore made a conscious decision not to disclose it;" (3) Ford "falsely failed to schedule [the claim] on her schedules;" and (4) Ford's failure to disclose the claim "was a blatant dishonesty resulting in her intent to hinder the Trustee's administration of the estate which would prejudice [sic]." Aplt. App. at 154.

Concluding that Ford sought the exemption in bad faith, the bankruptcy court denied the exemption.

## C. *The Bankruptcy Appellate Panel Proceedings*

Ford appealed to the Tenth Circuit Bankruptcy Appellate Panel (BAP). The BAP reversed, concluding the bankruptcy court's findings of bad faith were clearly erroneous and that its denial of the exemption was an abuse of discretion. Specifically, the BAP found there was insufficient evidence in the record to

---

[4](...continued)
2003) ("[D]ebtors have the absolute duty to report whatever interests they hold [], even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what [asset] is exempt from the bankruptcy estate.").

support a finding of bad faith and that Ford's delayed disclosure could just as easily be attributed to inadvertence as to intentional concealment. It reached this conclusion for three reasons: (1) Ford's minimal legal training could not be used to support an inference of bad faith; (2) the Trustee failed to articulate a motive for concealment in light of the fact that the settlement proceeds would be exempt anyway; and (3) there was an absence of a showing of prejudice to creditors arising from Ford's non-disclosure. BAP Decision at 5–6.

Finally, while the BAP agreed that debtors have a duty to schedule exempt assets so that "the trustee can investigate the legitimacy of the exemption," *id.* at 6, it nevertheless concluded a debtor ought not to be penalized for inadvertent or innocent non-disclosure. In the absence of evidence to support a finding of "bad faith, illicit motive, or an intent to conceal an asset from the Trustee and the creditors," the BAP held that denying an exemption was an abuse of discretion and reversed the bankruptcy court. *Id.*

## II. Standard of Review

"Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision." *Alderete v. Educ. Credit Mgmt. Corp.* (*In re Alderete*), 412 F.3d 1200, 1204 (10th Cir. 2005) (internal citations omitted). The bankruptcy court's denial of an exemption is reviewed for abuse of discretion. *In re Calder*, 973 F.2d 862, 868 (10th Cir. 1992). "A [] court abuses its discretion where it commits a legal error or relies on clearly erroneous factual findings, or

-7-

where there is no rational basis in the evidence for its ruling." *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (citations omitted).

Here, the bankruptcy court denied Ford's exemption based on its finding that she concealed her interest in the pending accident litigation in bad faith. A court's "determination that a debtor willfully concealed assets is a finding of fact . . . review[ed] for clear error." *Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996) (internal citations omitted).[5] A finding is not clearly erroneous unless "it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Connolly v. Harris Trust Co. of Ca. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002) (internal quote omitted); *United States v. Clark*, 415 F.3d 1234, 1246 (10th Cir. 2005).

Under the clearly erroneous standard, moreover, we defer to the trial court's assessment of the credibility of witnesses and other disputed facts:

> It is the responsibility of an appellate court to accept the ultimate factual determinations of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.

---

[5] The abuse of discretion standard is satisfied if the lower court commits a legal error *or* relies on a clearly erroneous factual finding. *Davis v. Mineta*, 302 F.3d at 1111. No legal error is at issue here, and thus the bankruptcy court did not abuse its discretion in denying Ford's exemption unless its determination of bad faith was clearly erroneous.

*Gillman v. Scientific Research Prods.* (*In re Mama D'Angelo*), 55 F.3d 552, 555 (10th Cir. 1995) (internal citation omitted). In addition, we are required to "view the evidence in the light most favorable to the [] court's ruling . . . and must uphold any [] court finding that is permissible in light of the evidence." *Exxon Corp. v. Gann*, 21 F.3d 1002, 1005 (10th Cir. 1994) (internal citation omitted).

With this background in mind, we turn to the two issues before us: (1) what is the correct burden of proof in determining debtor bad faith; and (2) was the bankruptcy court clearly erroneous in concluding Ford concealed her litigation interest in bad faith?

### III. Discussion

*A. Burden of Proof*

The bankruptcy court, at the Trustee's urging, reviewed the objection as requiring a clear and convincing showing of bad faith, relying on *In re Grogan*, 300 B.R. 804, 807 (Bankr. D. Utah 2003) ("[A]n exemption may be denied upon a clear and convincing showing of bad faith by the debtor."). While the Trustee prevailed under the higher burden of proof, he now advocates on appeal a lesser burden—a preponderance of the evidence standard. We agree that the appropriate burden of proof is a preponderance of the evidence standard.[6]

---

[6] Ford argues it is too late for the Trustee to advocate a different legal standard on appeal. But unlike a legal argument that is forfeited unless raised below, we are not obligated to apply an erroneous evidentiary standard. Moreover, we have "authority[] to affirm the bankruptcy court's decision on an

(continued...)

The Bankruptcy Code is silent as to the applicable burden of proof to establish bad faith in exemption proceedings pursuant to 11 U.S.C. § 522. Nevertheless, the Supreme Court has clarified the applicable burden in a closely analogous section of the Code. Specifically, § 523 precludes a debtor from securing a discharge from any debt "to the extent obtained by [bad faith]." 11 U.S.C. § 523(a)(2)(A). In interpreting the proof requirements in discharge proceedings under § 523, the Supreme Court has held that preponderance of the evidence is the correct burden of proof. *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991); *see also Fowler Bros. v. Young* (*In re Young*), 91 F.3d 1367, 1373 (10th Cir. 1996) (same).

In our view, discharge of debt under § 523 is analytically similar to obtaining an exemption in bankruptcy—in each case, the debtor is seeking a preference vis-a-vis creditors that will be sustained absent bad faith on the part of the debtor. As the Supreme Court explained in reviewing the debt discharge provisions of the Bankruptcy Code in *Grogan,* "a clear-and-convincing standard" is not "required to effectuate the 'fresh start' policy of the Bankruptcy Code." 498 U.S. at 286. Rather, the fresh start philosophy of the Code "limits the opportunity for a completely unencumbered new beginning to the 'honest but unfortunate debtor.'" *In re Young*, 237 F.3d 1168, 1178. In sum,

---

[6](...continued)
alternative ground which is supported by the record." *Sampson v. Sampson* (*In re Sampson*), 997 F.2d 717, 721 (10th Cir. 1993).

The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts—such as child support, alimony, and certain unpaid educational loans and taxes, as well as liabilities for fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start. We think it unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud. *Requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests.*

*Grogan*, 498 U.S. at 286–287 (internal citations omitted) (emphasis added).

This rationale applies with equal force to exemption proceedings. For the same reasons set forth by the Supreme Court in *Grogan*, we conclude a preponderance of the evidence standard governs the evaluation of bad faith in the context of a debtor seeking an exemption. The preponderance of evidence standard strikes a fair balance between the goal of encouraging disclosure and protecting creditors. *Accord In re Park*, 246 B.R. 837, 840 (Bankr. E.D. Tex. 2000) (applying preponderance standard); *In re Ciotta*, 222 B.R. 626, 629 (Bankr. C.D. Cal. 1998) ("If the trustee fails to carry the burden of proving by a preponderance of the evidence that the exemption should be disallowed, the exemption will stand.")[7]

---

[7] Our decision in *In re Calder*, 973 F.2d 862, 867 (10th Cir. 1992), does not support a clear and convincing evidence standard as Ford contends. *Calder* did not specify the applicable burden of proof, concluding only that there was "sufficient showing of bad faith and/or prejudice to creditors to support the denial
(continued...)

Accordingly, we hold that a trustee seeking to establish a debtor's bad faith in an exemption proceeding under § 522 must do so by a preponderance of the evidence.

## B. Bad Faith or Prejudice

Debtors may amend bankruptcy schedules as a matter of course. But an "amendment may be denied, however, if there is bad faith by the debtor or prejudice to creditors." *In re Calder*, 973 F.2d 862, 867–68 (10th Cir. 1992); *see generally* Fed. R. Bankr. P. 1009(a). The bankruptcy court found that Ford sought to amend her schedules to claim an exemption for her settlement proceeds in bad faith, and that the concealment prejudiced creditors. We agree.

Under both state and federal rules, Ford was required to disclose the settlement as an asset of her estate—contingent or otherwise—and then seek an exemption. These rules allow the trustee to investigate whether the claimed exemption is valid and ensure the debtor's estate is complete.[8]

---

[7](...continued)
of the [amended schedules]." *Id.* at 868.

[8] *See*, *e.g.*, BAP Decision at 6 ("An asset is required to be scheduled even if exempt so that, among other things, the trustee can investigate the legitimacy of the exemption."). *See also In re Robinson*, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003) ("[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate.").

The Bankruptcy Code does not define bad faith. Like most questions of motive and intent, bad faith is a question of fact. *In re Vincent J. Fasano, Inc.*, 55 B.R. 409 (Bankr. N.D. N.Y. 1985). Bad faith may be established by circumstantial evidence, or by inferences drawn from a course of conduct. *Farmers Coop. Ass'n of Talmage v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982). In exemption proceedings, the burden to establish bad faith rests on the party challenging the amended schedule. *Jenkins v. Hodes* (*In re Hodes*), 402 F.3d 1005, 1010 (10th Cir. 2005); Fed. R. Bankr. P. 4003(c).

We also recognize that an inadvertent omission may be an affirmative defense to a debtor's failure to disclose an asset in bankruptcy. Inadvertence can be established by showing, among other things, either (1) the debtor had no knowledge of the undisclosed asset, or (2) the debtor had no motive to conceal it. *In re Grogan*, 300 B.R. 804, 809 (Bankr. D. Utah 2003) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)). The burden of establishing inadvertence lies with the debtor. *Id.*

The bankruptcy court concluded Ford met neither one of these safe havens. The court found that Ford intentionally concealed her potential litigation interest and that the concealment prejudiced the Trustee's administration of the estate. For several reasons, we conclude these findings are not clearly erroneous.

Primarily, Ford's shifting explanations of why she failed to disclose the asset suggests bad faith. She first testified at her deposition (which became a trial

exhibit) that she knew the litigation proceeds "would be exempt" based on her training at "paralegal school." Aplt. App. at 34–35. This might be true, although it would not excuse her duty to list the asset and then claim an exemption. Ford further claimed she thought she was under no obligation to disclose the litigation interest because it did not involve a lawsuit brought *against* her. She added yet another twist to her rationale for nondisclosure in her testimony before the bankruptcy court: "[W]e had [not] gone to trial on this case or any mediation or anything." *Id*. at 130. Finally, even though she was told the lawsuit should be disclosed before her settlement, she took no steps to do so until well after the settlement had been reached. *Id*. at 116, 7–12.

Ford's explanations thus tend to support an inference that (1) she was uncertain about the scope and application of the personal injury exemption and how it might affect her litigation at the time she prepared her schedules; (2) she intentionally concealed the asset to prevent scrutiny of it as part of the bankruptcy proceedings; and (3) she only disclosed the asset when she learned that the settlement proceeds could not be disbursed without reopening the bankruptcy case. While the evidence may also support a more benign explanation of her state of mind, the bankruptcy court had some evidence that Ford was not entirely candid about her reasons for concealing the asset and thus acted in bad faith in preparing her asset schedules.

In addition, the record suggests Ford's accident settlement could have included recovery for non-exempt property damages (e.g., damage to her car). Ford testified that she became aware of her duty to disclose the asset in August, but failed to amend her schedules until *after* she participated in a settlement conference in September that directed all proceeds to be characterized as compensation for Ford's personal injuries. As the Trustee argued at the hearing below, that meant Ford would be entitled to all of the settlement proceeds under Utah's exemption laws. But had the Trustee been afforded timely notice he may have participated in or helped structure the litigation settlement to include a property allocation for the benefit of creditors. *See In re Grogan*, 300 B.R. at 809–10.[9] This evidence, in sum, tends to support the bankruptcy court's conclusion that Ford "hinder[ed] the Trustee's administration of the estate" to the prejudice of creditors. Bankr. Ct. Order, Aplt. App. at 154.

In its review, the BAP discounted this testimony in concluding Ford had neither the expertise in bankruptcy law nor the motive to conceal. We agree with much of the BAP's analysis, and would have had little trouble affirming a bankruptcy court decision going the other way, given our standard of review.

---

[9] *Grogan* also describes other forms of prejudice that might arise from debtor concealment, including the time and expense of subsequent litigation, or unnecessary investigations by the Trustee "to ferret out" undisclosed assets. 300 B.R. at 810. *See also Calder,* 973 F.2d at 868.

This is a close case.  But as we discussed above, the evidence as a whole allows a different interpretation of the facts.

In the end, while the bankruptcy court's order could have provided more detail in support of its conclusions, we are satisfied it meets the minimal standard for clear error review.  The court's conclusions were based on the exhibits and testimony presented in adversarial proceedings.  It had an opportunity to consider and assess Ford's demeanor and candor.  "When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings."  *Dalton v. IRS*, 77 F.3d at 1302 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)).  And, as is typical in these types of proceedings,

> The problem in ascertaining whether a debtor acted with fraudulent intent is difficult because, ordinarily, the debtor will be the only person able to testify directly concerning his intent and he is unlikely to state that his intent was fraudulent.  Therefore, fraudulent intent may be deduced from the facts and circumstances of a case.

*In re Calder*, 907 F.2d at 955–956.   In short, the bankruptcy court's conclusions satisfy the clear error standard—they are not "completely devoid of minimum evidentiary support" and bear a "rational relationship to the supportive evidentiary data."  *Gillman*, 55 F.3d at 555.

On the whole, we are satisfied that the bankruptcy court's finding of bad faith is supported by some credible evidence, and therefore find no clear error.

The bankruptcy court likewise did not abuse its discretion in denying the exemption.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.